# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0618-19

M.K.,[1]

     Plaintiff-Respondent,

v.

Q.E.,

     Defendant-Appellant.

_____

         Submitted January 25, 2021 – Decided February 10, 2021

         Before Judges Rothstadt and Mayer.

         On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-2308-19.

         The Anthony Pope Law Firm, PC, attorneys for appellant (Annette Verdesco, on the brief).

         Schultz & Associates, LLC, attorneys for respondent (Anthony W. Dunleavy, on the brief).

PER CURIAM

---

[1] We use initials in accordance with <u>Rule</u> 1:38-3(d)(10).

Defendant appeals from a September 11, 2019 final restraining order (FRO) entered in favor of plaintiff under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, and an October 2, 2019 amended FRO awarding fees and costs to plaintiff's counsel. We affirm both orders.

The parties married in May 2015 and divorced in December 2018. They have joint custody of their four-year old child. In accordance with the parenting time arrangement, defendant has alternate weekends with the child and "the right of first refusal to care for their son whenever the plaintiff travels for business." Because plaintiff traveled frequently, defendant enjoyed significant parenting time with the child.

The incident precipitating plaintiff's application for a temporary restraining order (TRO) occurred on June 1, 2019. On that date, defendant sent a video message to plaintiff "lasting over [thirty] seconds in which he repeatedly berates her and says she is a horrible person and repeatedly calls her" crude and vulgar names.

Four days later, plaintiff applied for a TRO, alleging defendant committed the predicate act of cyber harassment. She obtained an amended TRO on June 18, 2019, which included prior acts of domestic violence committed by defendant from March 2019 through the date of the TRO.

The domestic violence trial took place before Judge Bernadette N. DeCastro on June 26, July 11, and August 29, 2019. On the second day of trial, plaintiff moved to amend the TRO to include the predicate act of harassment, and defense counsel objected. Judge DeCastro granted the motion, explaining a "clerical error" caused harassment to be omitted from the TRO. After the judge allowed the amendment, plaintiff's counsel inquired if defense counsel needed additional time to prepare a defense. Because the trial was not scheduled to resume until two weeks later, defendant's attorney responded he had sufficient time to address the added harassment claim.

Plaintiff and defendant were the only witnesses who testified at the domestic violence trial. In addition, text messages, videos, and pictures sent by defendant to plaintiff were admitted as evidence during the trial. After completion of the trial testimony, on September 11, 2019, Judge DeCastro entered an FRO against defendant, finding he committed the predicate act of harassment. In addition to placing her reasons on the record on September 11, the judge issued a written decision on that same date.

In her written decision, Judge DeCastro set forth detailed fact-findings regarding the images and text messages sent by defendant in support of her

harassment determination. In addition, she rendered credibility determinations based on her opportunity to see and hear the witnesses.

Judge DeCastro found defendant caused communications to be sent to plaintiff "early in the morning hour as well as late at night" that "both annoyed and alarmed the plaintiff." The prior incidents described by plaintiff during her testimony included ranting and harassing messages from defendant using "extremely coarse language, berating [plaintiff] for keeping their son away from him, telling her she's ugly, she's a transgender[,] and a man and that no one likes her."

The parties are familiar with the trial testimony, and we need not detail the ugly, vulgar, offensive, and crude text messages and images sent to plaintiff by defendant. We incorporate the factual findings regarding those text messages and images sent to plaintiff between March 11, 2019 and June 5, 2019 as stated in Judge DeCastro's thorough and meticulous September 11, 2019 written decision.

According to plaintiff, defendant's messages and pictures caused her to be "alarmed," "horrified," and "upset" because many of the heinous and insidious messages were sent while defendant was caring for their son. At the same time, plaintiff explained she felt defeated and powerless to stop the barrage of vile

4

communications from defendant. Although plaintiff threatened to block defendant's messages if he did not "stop using abusive words[,]" defendant was undeterred and continued to send raging messages.

Plaintiff testified she lived in fear defendant would text her in the middle of the night and was afraid to wake up to his despicable messages. Plaintiff told the judge the messages were mentally exhausting, nerve racking, alarming, and offensive. The messages sent by defendant while plaintiff was at work were hostile, not only to plaintiff but to her friends and co-workers as well. Plaintiff feared defendant's messages would negatively affect her career.

Judge DeCastro found defendant "defensive" when he first testified. Defendant did not dispute he sent the text messages and images to plaintiff. Rather, defendant claimed "the course, vulgar[,] and disgusting language he used was the pattern of language used between the parties during the marriage[,]" and that "plaintiff was not bothered by [the] sort of language and innuendoes" in his video and texts. In support of his position, defendant submitted a video of the parties arguing during the marriage. However, Judge DeCastro found "the sort of language depicted in the verbal argument hardly rose to the level of vulgar, offensive, racist[,] and homophobic content that

A-0618-19

defendant used in the barrage of text messages that he sent to the plaintiff since March 2019."

Judge DeCastro rejected defendant's contention the messages were the result of his frustration regarding parenting time with the child. The judge explained, "[t]he parties had a very detailed parenting agreement and [defendant] did not submit any proof that [plaintiff] interfered with this parenting time agreement." If plaintiff was interfering with defendant's parenting time, the judge stated, "[T]he remedy was for [defendant] to file a post[-]judgment motion under the FM docket. Resorting to obnoxious, vulgar, insulting[,] and alarming texts was not the remedy. None of [defendant's] testimony regarding his frustration with parenting time excuse[d] the barrage of harassing text messages." Based on admissions made during his testimony, Judge DeCastro found defendant "was trying to get [plaintiff's] attention by sending these messages to her" and "he did it to annoy [plaintiff]."

Judge DeCastro remarked defendant's demeanor during cross-examination on the second day of trial was "markedly different." At that time, defendant conceded plaintiff was a good mother and his calling her stupid, a whore, and other vulgar names was wrong. He also admitted "he sent the texts and video message to plaintiff to get a reaction from [plaintiff]" and "he ha[d]

6

uncontrollable anger and 'rages.'"[2]  Defendant also acknowledged "his behavior was very immature and disgusting and it was wrong for him to have sent the doctored photograph of plaintiff and her co-worker . . . ."  Defendant told the judge "he [would] never, ever do it again."  Yet, defendant attempted to excuse his behavior by telling the judge that plaintiff said awful things to him as well.

After summarizing the testimony, Judge DeCastro found plaintiff's testimony "credible and persuasive throughout the trial."  The judge concluded plaintiff "was credible when she said she was alarmed and annoyed by not only the June 1 video message but by the escalating hateful texts leading up to the video message[.]"  She also noted plaintiff "was visibly upset when recalling the hideous names that she was called."

On the other hand, while defendant "expressed remorse and acknowledged that he was wrong," Judge DeCastro noted, "he admitted that his intent was to annoy and get a reaction from plaintiff."  As a result, the judge determined defendant's "regret was not wholly sincere."  Even after expressing regret, defendant attempted to justify his actions by claiming "this was just how [the parties] spoke to each other."  Judge DeCastro found "there was no evidence that

---

[2]  Defendant began attending an anger management program after the issuance of the TRO.

7

during [defendant's] escalating and alarming messages, [plaintiff] ever retorted in kind other than threaten to block him."

Based on her finding, Judge DeCastro determined defendant's conduct constituted the predicate act of harassment under N.J.S.A. 2C:33-4(a) and (c). Judge DeCastro concluded defendant's communications "were designed to inflict substantial emotional distress and to seriously annoy the plaintiff which repeatedly and intolerably interfered with her reasonable expectation of privacy."[3]

After determining defendant committed the predicate act of harassment, Judge DeCastro found plaintiff required the protection of a restraining order. Based on the "past history that escalated and led to the predicate act[,]" the judge found "defendant's purpose, motive, and intent was to annoy, alarm, and get the plaintiff's attention all because he was frustrated by not being able to see and speak with his son whenever he wanted." Further, because defendant admitted "he would 'rage' when he believed the plaintiff was keeping their son from having contact with him and . . . [had] anger management problems[,]" Judge

---

[3] Plaintiff also alleged defendant committed the predicate acts of cyber harassment and contempt of a domestic violence order. However, the judge did not find defendant engaged in conduct constituting cyber harassment or violated the TRO.

DeCastro deemed an "FRO [was] necessary to protect the plaintiff from further acts of DV harassment."

After entry of the FRO, plaintiff filed a motion for counsel fees. In an October 2, 2019 amended FRO, Judge DeCastro awarded counsel fees to plaintiff's attorney. The supporting affidavit of legal services requested a total of $17,519.50 in counsel fees. Applying the factors enumerated in Rule 4:42-9(b) and Rule of Professional Conduct (R.P.C.) 1.5, Judge DeCastro found most of plaintiff's attorneys fees were incurred as a direct result of the domestic violence complaint. However, in exercising discretion accorded under the Court Rule and R.P.C., Judge DeCastro reduced the legal fees for services related to cyber harassment and contempt of court because she did not find defendant committed either of those predicate acts. In addition, she declined to award fees associated with the parties' exercise of parenting time and plaintiff's motion to amend the TRO. Judge DeCastro awarded a total of $12,339.50 in counsel fees to plaintiff's attorney.

On appeal, defendant contends there was no basis for the judge to find the required intention to harass. In addition, he asserts the fee award should have been further reduced. He also claims the mid-trial amendment of the TRO to include a claim for harassment was prejudicial. We reject these arguments.

Our scope of review of Family Part judges' fact-findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part judge's findings of fact because of his or her special expertise in family matters. Id. at 413. "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). A judge's fact-finding is "binding on appeal when supported by adequate, substantial, credible evidence." Id. at 412 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we owe no special deference to the trial judge's "interpretation of the law and the legal consequences that flow from established facts . . . ." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citing State v. Brown, 118 N.J. 595, 604 (1990)).

When determining whether to grant an FRO under the PDVA, a judge must undertake a two-part analysis. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. Second, the judge must determine whether a restraining order is necessary to protect the plaintiff from future acts or threats of violence. Id. at 126-27.

10

Since this case turned almost exclusively on the testimony of the witnesses, we defer to the Family Part judge's credibility findings as she had the opportunity to listen to the witnesses and observe their demeanor. See Gnall v. Gnall, 222 N.J. 414, 428 (2015) (indicating reviewing courts should defer to the trial judge's credibility determinations). We discern no basis on this record to question the judge's credibility determinations.

Under the first prong of Silver, Judge DeCastro found defendant guilty of harassment. A person is guilty of harassment where, "with [the] purpose to harass another," he or she:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm; [or]
>
>   . . . .
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4(a) to (c).]

Harassment requires the defendant act with the purpose of harassing the victim. J.D. v. M.D.F., 207 N.J. 458, 486 (2011). A judge may use "[c]ommon sense and experience" when determining a defendant's intent. State v. Hoffman,

149 N.J. 564, 577 (1997) (citing State v. Richards, 155 N.J. Super. 106, 118 (App. Div. 1978)). "'A finding of a purpose to harass may be inferred from the evidence presented' and from common sense and experience." H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003) (quoting Hoffman, 149 N.J. at 577). Under the definition of harassment, "any other course of alarming conduct" and "acts with purpose to alarm or seriously annoy" are to be construed as "repeated communications directed at a person that reasonably put that person in fear for his safety or security or that intolerably interfere with that person's reasonable expectation of privacy." State v. Burkert, 231 N.J. 257, 284-85 (2017).

Having reviewed the record, we conclude there was sufficient credible evidence supporting Judge DeCastro's determination defendant committed the predicate act of harassment consistent with the PDVA in support of the first Silver prong. Defendant's vulgar and offensively coarse text messages and video constituted communications likely to annoy plaintiff and were sent with the purpose to annoy her. N.J.S.A. 2C:33-4(a) and (c). In fact, defendant admitted he sent the communications to annoy plaintiff. Further, the messages were sent at all hours of the day and night, and the tone and tenor of defendant's messages escalated in their vileness. While the judge may not have used the words "purpose to harass," she concluded defendant's barrage of offensive and vulgar

messages were made to annoy plaintiff and had the purpose to harass. See D.N. v. K.M., 429 N.J. Super. 592, 598 (App. Div. 2013) (deciding in the context of an FRO hearing that "[w]hile the judge could have stated more, giving the deference we must, we are satisfied the findings sufficiently support the court's conclusions").

We next consider defendant's claim the judge erred in finding plaintiff required an FRO to protect her from future acts of domestic violence. In determining whether a restraining order is necessary, the judge must evaluate the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6) and, applying those factors, decide whether an FRO is required "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. Whether a restraining order should be issued depends on the seriousness of the predicate offense, "the previous history of domestic violence between the plaintiff and defendant including previous threats [and] harassment[,]" and "whether immediate danger to the person or property is present." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995) (citing N.J.S.A. 2C:25-29(a)).

Here, based on the credible testimony, Judge DeCastro found an FRO was necessary to protect plaintiff from further harassment by defendant. Plaintiff

lived in fear defendant would text her in the middle of the night, and she was afraid to wake up to his despicable messages. Plaintiff testified defendant's barrage of vile messages were mentally exhausting, nerve racking, and alarming. Plaintiff also told the judge defendant's behavior was unpredictable and frightening.

The judge determined defendant's pattern of behavior and his offensive messages to plaintiff "intolerably interfered with plaintiff's reasonable expectation of privacy." Based on this record, we are satisfied the FRO was necessary to protect plaintiff from further abuse by defendant, and there was sufficient evidence in the record to support the judge's findings under both Silver prongs.

We next consider defendant's claimed denial of due process based on the mid-trial amendment of the TRO to include harassment and the admission of "incidents extrinsic to the TRO complaint." We disagree.

We note defendant's counsel did not object to plaintiff's testimony based on conduct and incidents not contained in her TRO complaint. Further, much of the challenged "extrinsic" testimony was elicited by defense counsel during cross-examination of plaintiff. More importantly, Judge DeCastro did not rely on the "extrinsic" evidence in finding harassment.

14

In accordance with <u>Rule</u> 1:13-1, "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight and omission may at any time be corrected by the court on its own initiative or on the motion of any party . . . ."  Here, Judge DeCastro found it was "clear that the [c]ourt staff somehow erred in not checking off [harassment]" and allowed the TRO to be amended to include harassment in accordance with the testimony.

Further, <u>Rule</u> 4:9 allows the amending of a complaint, even during a trial, to conform to the testimony.  During the trial, plaintiff testified at length regarding the harassing text messages she received from defendant.  Based on plaintiff's testimony, Judge DeCastro did not err in amending the TRO to include the predicate act of harassment.

The judge also determined the mid-trial amendment of the TRO did not result in any prejudice to defendant.  She observed "every act [plaintiff] allege[d] was harassment [was] listed in the amended TRO."  Therefore, Judge DeCastro found defendant had sufficient notice in satisfaction of his due process rights.  Further, the domestic violence trial did not resume until two weeks after the judge allowed the amended TRO, resulting in ample time for defense counsel to prepare.  Judge DeCastro also allowed defendant's attorney to re-examine plaintiff based on the added harassment claim.

A-0618-19

At no time did defendant seek further adjournment of the trial to afford him additional time to prepare his defense. During the hearing on the motion to amend the TRO, plaintiff's counsel asked if defendant's attorney required more time to prepare, and counsel responded two weeks was "fine." Based on the foregoing, we are satisfied Judge DeCastro properly exercised her discretion in allowing the mid-trial amendment of the TRO, and defendant did not suffer prejudice as a result.

We next review defendant's claim the judge erred by not further reducing the amount of counsel fees awarded to plaintiff's counsel. Compensatory damages and reasonable fees may be awarded in domestic violence cases. McGowan v. O'Rourke, 391 N.J. Super. 502, 507-08 (App. Div. 2007). "The reasonableness of attorney's fees is determined by the court considering the factors enumerated in R. 4:42-9(b)." Id. at 508. An award of attorney's fees is "within the discretion of the trial judge" and should be "disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Ibid. (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 443-44 (2001)).

We discern no abuse of discretion in the amount of counsel fees awarded by Judge DeCastro. The judge reviewed the factors set forth in N.J.S.A. 2C:25-29(b)(4) and Rule 4:42-9(b) in determining the award of counsel fees. She

explained the basis for reducing the requested legal fees and set forth the specific sums deducted from the amount sought in counsel's affidavit of legal services.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17