# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0368-20

H.S.,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

R.S.,

      Defendant-Appellant/
      Cross-Respondent.

_____

      Argued January 4, 2022 – Decided February 28, 2022

      Before Judges Fisher, DeAlmeida and Smith.

      On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-1512-20.

      Michael Confusione argued the cause for appellant/cross-respondent (Hegge & Confusione, LLC, attorneys; Michael Confusione, of counsel and on the briefs).

      Robert A. Epstein argued the cause for respondent/cross-appellant (Ziegler, Resnick &

Epstein, attorneys; Robert A. Epstein, of counsel and on the briefs; Aislinn M. Koch, on the briefs).

PER CURIAM

Defendant appeals a final restraining order (FRO) issued against him in an action brought by plaintiff under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant seeks to vacate the FRO, arguing there was insufficient evidence to support a finding of an assault – the predicate act – and insufficient evidence to support finding the FRO was needed to ensure plaintiff's future protection. Defendant also argues, among other things, that the trial judge misapplied the applicable legal principles and erred in denying his motion to reconsider. Plaintiff cross-appeals, arguing the court should have granted her application for counsel fees. For the following reasons, we affirm in part, and reverse in part.

I.

Each party was represented by counsel at the three-day FRO hearing, and the court heard testimony from multiple witnesses including plaintiff, plaintiff's sister, a neighbor, P.V., a police officer, defendant, and a school parent, K.B.

The parties were married in June 2002 and had two children together: a son, Y.S. (born in 2012), and a daughter, H.S. (born in 2016). The parties separated in December 2019.

2

The parties had a physical altercation outside of their son's school on January 13, 2020, which prompted plaintiff to seek a Temporary Restraining Order (TRO) against defendant. Plaintiff alleged defendant showed up "out of nowhere" during morning drop-off, pushed her out of the way, and got into the driver seat of her car. She testified that she tried to stop defendant, as their three-and-a-half-year-old daughter was still in the backseat of the car, and that nearby parents quickly assisted her, gathering around the vehicle to prevent defendant from driving away.

K.B. was one of the parents at the scene. She testified that she "heard yelling . . . looked up and . . . saw [defendant] grab [plaintiff] and . . . push her away from the car." She testified that she yelled, in a very loud voice "hey, leave her alone" and "you can't put your hands on your wife like that." She testified that she may have used the word "assault." At some point during this incident, plaintiff removed the child from the car, and K.B. called the police. Defendant then drove the car away, leaving plaintiff and their daughter behind. The police stopped defendant shortly thereafter.

Plaintiff's complaint described the January 13 incident and alleged several other acts of domestic violence against her during the marriage. The other acts included: grabbing plaintiff by the hair; forcing her out of the apartment;

3

throwing her onto the stairs; choking her; threatening to kill her; threatening to ruin her career; threatening to take their children away from her; kicking her in the chest; throwing her on the floor; and hitting her in the face. The judge issued the TRO and granted plaintiff's application to amend the TRO a few days later to add more details and specifics about the alleged abuse she endured.

Plaintiff testified regarding the allegations in her complaint and the injuries she sustained. P.V. testified that plaintiff summoned him via text message to come to the parties' apartment, which he did. While he was standing on the parties' porch peering through the screen door, he saw defendant pull plaintiff down by her hair and strike her across the face.

An audio recording, which plaintiff made with her cellphone, captured another physical altercation between defendant and plaintiff, and was admitted into evidence.

After trial, the judge made findings and issued an oral opinion. The judge found defendant had a serious "credibility problem." The judge went on to specifically state: "I don't believe [defendant] about what happened on January 13[] with the assault . . . ." The judge found plaintiff credible, and further found the January 13 incident at the car constituted an assault and therefore a predicate act which satisfied the PDVA.

A-0368-20

In finding the January 13 assault to be a predicate act, the judge relied on independent witness K.B.'s testimony that she saw defendant push plaintiff by the car, that defendant appeared angry and aggressive, and that she told him "you can't put your hands on your wife." He found K.B. credible because of her demeanor and because she was unfamiliar with the parties before the incident so she "clearly had no . . . motivation . . to make this up."

The judge also found the neighbor, P.V., credible, noting that his demeanor was "calm [and] collected" while on the witness stand. The judge stated that he "fully believe[d] the neighbor[] over the defendant. . . ." Finally, the judge carefully considered the cellphone audio recording of the altercation between plaintiff and defendant:

> [The recording] shows what happens when the defendant gets serious with the plaintiff and really gets mad . . . I heard a scuffle which sounded to me, it's in the record, like him striking her or shoving her or putting her down on the ground as she testified to. Then she shuts up. And all I hear is whimpering. . . . [W]hen he turns up the screws and she knows that he's really mad and he's really serious and he gets violent with her, she shuts up. . . . [T]hat's clear from [the recording].

After applying these facts to Silver v. Silver, [1] the judge issued a final restraining order, explaining:

---

[1] Silver v. Silver, 387 N.J. Super. 112, 123 (App. Div. 2006).

5

I find that because of the credibility issues I believe [plaintiff] on each of the predicate acts . . . alleged in the restraining order. I believe that they have been going all the way back to [the parties'] honeymoon. . . . [T]he act[s] themselves are very egregious and have continued over a long period of time. And . . . I don't think anything short of a restraining order will stop it. . . . It is self-evident here that we need a domestic violence order entered to prevent any further acts of domestic violence or abuse.

The trial judge then turned to defendant's custody and parenting time application, finding a "50/50 custody split [was] appropriate for now." Examining the record, the judge found "no indication of violence with the children, [or] against the children." With no evidence of harm against the children, the court concluded it would "not be in the best interest of the child[ren] . . . [to] take away custody or visitation of a natural father." Regarding parenting time, the judge set a schedule and communication parameters for the parties.

Both parties sought counsel fees. The court noted that although plaintiff had "won" the FRO case, she was unsuccessful in her effort to gain sole custody. Consequently, the judge denied her application for counsel fees because it was "impossible for the [c]ourt to discern which charges were directly . . . related to the underlying . . . domestic violence [matter] versus the custody battle." Defendant's request was also denied.

Defendant filed a motion to reconsider the FRO, and plaintiff filed a cross-motion, seeking reconsideration of the counsel fees order.

The judge denied defendant's reconsideration motion, finding defendant's "new evidence" was known to defendant at the time of the FRO hearing. For completeness, the judge also found the newly submitted facts "would not have significantly altered [the court's] decision in light of all the other evidence and credibility findings . . . in the case." The judge next addressed plaintiff's reconsideration motion on counsel fees. Plaintiff argued that the billing records could be "modif[ied] . . . to clear it up for [the judge]." The judge rejected the offer and denied plaintiff's motion to reconsider.

The cross-appeals followed. Defendant makes the following points:

> A. [THE TRIAL JUDGE] ERRED IN RULING THAT THE JANUARY 13 INCIDENT WAS A PREDICATE ACT
>
> B. [THE TRIAL JUDGE] MISAPPLIED NEW JERSEY LAW IN RULING, "I AM, ALSO, SAYING THAT EVEN IF YOU WANT TO CONSIDER JANUARY 13TH TO BE AN AMBIGUOUS, NOT AN EGREGIOUS EVENT I THINK THAT THE PREDICATE ACTS ALLEGED IN THE TRO CAN BE CONSIDERED PRIOR CONDUCT TO CONVERT THE JANUARY 13TH INCIDENT INTO A PREDICATE ACT"
>
> C. EVEN IF THE FAMILY JUDGE PROPERLY FOUND A PREDICATE ACT, THERE IS

7

INSUFFICIENT EVIDENCE TO SUSTAIN THE JUDGE'S CONCLUSION UNDER THE SECOND REQUIREMENT OF THE ACT THAT "RELIEF [IS] NECESSARY TO PREVENT FURTHER ABUSE," N.J.S.A. 2C:25–29(B)

D. [THE TRIAL JUDGE] COMMITTED FURTHER ERROR OF LAW BY STATING THAT ENTERING THE FRO WAS ONLY A "STOP GAP MEASURE"

E. THE FAMILY COURT AT LEAST ERRED IN DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

Plaintiff makes one argument on her cross-appeal:

VI. THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S REQUESTED COMPENSATORY DAMAGES AWARD UNDER THE ACT

II.

The scope of appellate review of a Family Part judge's findings following a bench trial is limited. N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015) (citing Cesare v. Cesare, 154 N.J. 394, 411 (1998)). We owe substantial deference to the Family Part's findings of fact because of its special expertise in family matters. Id. at 413 (citations omitted). Deference is especially appropriate in bench trials when the evidence is "largely testimonial and involves questions of credibility." Id. at 412 (citations omitted). A trial judge who observes witnesses and listens to their testimony is in the best position to

"make first-hand credibility judgments about the witnesses who appear on the stand . . . ." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008). We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

To determine whether the entry of an FRO is appropriate, the court must first "determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Silver, 387 N.J. Super. at 125. If the court finds the defendant committed a predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Id. at 126. While the second inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25–

9

29[(a)](1) to –29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127.

On reconsideration, we will not disturb the trial court's order "unless it represents a clear abuse of discretion." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2014) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

III.

Defendant argues that the trial judge erred in issuing an FRO because: the plaintiff failed to prove the January 13 incident was an assault; the prior history of abuse should not have been considered in finding an assault; and an FRO was not needed to prevent further abuse. We are not persuaded and reject defendant's appeal.

N.J.S.A. 2C:25-19(a) specifies assault[2] as a predicate act of domestic violence. Isolated predicate acts without more may not sufficiently warrant an

_____

[2] N.J.S.A. 2C:12-1(a) defines simple assault as "A person is guilty of assault if the person: (1) Attempts to cause or purposely, knowingly or recklessly causes

FRO. Kamen v. Egan, 332 N.J. Super. 222, 224-25 (App. Div. 1999) (concluding that single act of trespass unaccompanied by violence was insufficient for an FRO). When an act is "ambiguous", a court may still determine that it qualifies as domestic violence based on findings of previous abuse between the parties. Silver, 387 N.J. Super. at 123 (citing Cesare, 154 N.J. at 402). But a prior pattern of violence is not a pre-requisite. A single, sufficiently egregious action alone may constitute domestic violence even if there is no history of abuse present. Ibid.

In Cesare, the Supreme Court contemplated situations where a court might evaluate prior history of abuse. Ibid. It reasoned that while courts are "not obligated to find a past history of abuse before determining that an act of domestic violence has been committed in a particular situation, [courts] must at least consider the [prior history] in the course of its analysis." Ibid. As such, "a finding of violence in the parties' past" may lead the court to conclude that "an ambiguous incident qualifies as prohibited conduct [under the statute]." Ibid.

---

bodily injury to another; or (2) Negligently causes bodily injury to another with a deadly weapon; or (3) Attempts by physical menace to put another in fear of imminent serious bodily injury."

A-0368-20

We have upheld decisions where prior patterns of domestic violence were considered.  See Pazienza v. Camarata, 381 N.J. Super. 173, 183 (App. Div. 2005).  For example, in Pazienza, we determined that the "judge correctly considered the prior history of domestic violence in evaluating defendant's [harassment] that was the subject of the . . . complaint." Ibid.  We applied the logic of Cesare, observing that the PDVA

> expressly directs the court to consider such history, including threats, harassment and physical abuse. . . . [And,] [b]ecause a particular history can greatly affect the context of a domestic violence dispute, [courts] must weigh the entire relationship between the parties and must specifically set forth their findings of fact in that regard.
>
> [Ibid. (emphasis added) (citations omitted).]

Ultimately, we found the judge correctly applied these principles, evaluating defendant's ambiguous messages in the context of the couple's history, and affirmed the decision finding the conduct qualified as domestic violence under the PDVA.

In light of this, defendant's position is untenable.  See Cesare, 154 N.J. at 402. See also J.D. v. M.D.F., 207 N.J. 458, 483 (2011) ("a history of domestic violence may serve to give context to otherwise ambiguous behavior and support entry of a restraining order"); T.M. v. R.M.W., 456 N.J. Super. 446, 459 (Ch.

12

Div. 2017) (incidents should not be analyzed in a vacuum, rather the court must consider the history between the parties as it can greatly affect the context of a domestic violence dispute).

Although the underlying predicate act before us is assault, unlike harassment in Pazienza, the same logic applies. The trial judge saw and heard three days of trial testimony, multiple witnesses, video, audio recordings, photographs, and text messages. He made credibility determinations based on the comprehensive record. The judge concluded that the January 13 incident was an assault. The substantial, credible evidence in the record supports both the finding of a standalone act and an ambiguous act with a history of abuse, either of which qualifies as a predicate act of domestic violence under the PDVA. From either perspective, the first prong of Silver is met.

On the second Silver prong, the judge concluded that the record, which reflected the history of domestic violence between the parties, was more than enough to conclude a final restraining order was needed to protect plaintiff going forward. See Silver, 387 N.J. Super. at 126 (the second prong of the two (2) step analysis is "most often perfunctory and self-evident"). We have considered defendant's remaining arguments, and we find them to lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Given the

13

substantial deference we afford Family Part judges in domestic violence matters, we discern no basis to disturb the FRO.

We turn to plaintiff's cross-appeal from the trial court's denial of her motion for attorney's fees. The PDVA expressly includes reasonable attorney's fees as compensatory damages available to victims of domestic violence. N.J.S.A. 2C:25-29(b)(4). "The reasonableness of attorney's fees is determined by consideration of the factors enumerated in R. 4:42-9(b)." McGowan v. O'Rourke, 391 N.J. Super. 502, 507-08 (App. Div. 2007). "If, after considering those factors, the court finds that the domestic violence victim's attorney's fees are reasonable, and they are incurred as a direct result of domestic violence, then a court, in an exercise of its discretion, may award those fees." Ibid.

We note that "an award of attorney's fees continues to rest within the discretion of the trial judge." Ibid. (citing Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 443-44 (2001)). Any "determinations by trial courts regarding legal fees will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Ibid.

The manner in which a reasonable counsel fee is to be determined is well-settled. R.M. v. Supreme Court of New Jersey, 190 N.J. 1, 9-11 (1997). It is not enough for the trial judge to conclude that counsel fees attributable to

14

plaintiff's PDVA complaint were unknowable because billing from the FRO was "inextricably intertwined" with billing from the custody dispute. Recognizing that plaintiff's submission was insufficient, the judge should have directed counsel to resubmit the fee application in a manner that would accurately explain which billable hours are attributable as compensatory damages under the PDVA, where plaintiff prevailed, and which billable hours are attributable to child custody issues, where plaintiff did not prevail.

Upon resubmittal, the trial court must perform the two-factor calculation necessary to determine the "lodestar," and arrive at a fee award based on the record before the court. Id. We also note, without making any finding, that plaintiff may be entitled to legal expenses incurred from opposing defendant's appeal, so long as those fees are reasonable, pursuant to R. 4:42-9(b), and supported by affidavit. See McGowan, 291 N.J. Super. at 507. See also Grandovic v. Labrie, 348 N.J. Super. 193, 197 (App. Div. 2002) (it would be "inimical to the Act to deny a victim an award of reasonable attorney's fees and costs incurred in successfully defending against a challenge to a final restraining order issued by the trial court.").

Accordingly, we reverse the portion of the order denying counsel fees to plaintiff and remand for the judge to decide the issue based upon supplemental

written submissions on the fee question from the parties, with or without a hearing in the sound discretion of the court.

Affirmed in part. Reversed and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0368-20