# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0698-22

M.J.S.,[1]

    Plaintiff-Respondent,

v.

C.R.A.S.,

    Defendant-Appellant.

_____

Submitted November 28, 2023 – Decided December 14, 2023

Before Judges Smith and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FV-01-0565-23.

Tonacchio, Spina & Compitello, attorneys for appellant (Ciro A. Spina, of counsel; Stephen R. Cappetta, on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the confidentiality of the victim in these proceedings. R. 1:38-3(d)(10).

Defendant C.R.A.S. appeals from the October 27, 2022 final restraining order (FRO) entered against her under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant argues the Family Part judge erred in finding plaintiff M.J.S. had demonstrated the predicate act of harassment and that the FRO was necessary to ensure his future protection. Our review of the record demonstrates the judge's findings are supported by sufficient credible evidence. We affirm.

I.

The parties were married for eighteen years and had three children. The parties separated in May 2019 and divorced in April 2022. They shared joint custody of their minor children with a fifty-fifty parenting time arrangement.

On October 16, 2022, plaintiff obtained a temporary restraining order (TRO) after filing a domestic violence complaint alleging defendant committed a predicate act of harassment. Concomitantly, defendant applied for and received a TRO. On October 27, following a trial, plaintiff was granted an FRO against defendant, but defendant's application for an FRO was denied. On appeal, defendant challenges only the issuance of plaintiff's FRO.

During the trial, the parties testified to a long history of acrimony and contentiousness. They had filed multiple prior domestic violence complaints

A-0698-22

against each other. Prior to the time of trial, they had entered into a consent order imposing mutual civil restraints.

Plaintiff testified that defendant had sent multiple disturbing text messages ridiculing his girlfriend and threatening him. At trial, the text messages were introduced without objection and stated in pertinent part:

> This is my final request . . . [t]hat . . . you have your boyfriend remove the pictures that ha[ve] my children on her public profile and remove our children from her Facebook profile. Otherwise, I'll remove my children from your life. There is no lie in the fact that your boyfriend publicly posted our children, and I asked you to remove it. Instead[,] your boyfriend decided to make it personal with me. I don't care that you have a boyfriend. You shouldn't be embarrassed by that. Having said that, in order for it to be a defamation it would have to harm her financially, and since this is a private message between a mother and a father, the mother which is trying to protect her children from your predatory boyfriend, I don't believe that it falls in the category of defamation, but she can give it a shot if she wants. Then there's always the truth that is the defense. It's okay for her to be a transvestite, but that doesn't mean that I have to like or act like she's not.

Plaintiff testified that although he found the text messages "harassing," he sought the restraining order after his daughters told him to review his Yelp and Facebook pages and he discovered a damaging review. Plaintiff owned a karate school and believed his Yelp page was relevant to his business. He believed

3

defendant created the review, which accused him of being a "sexual predator." The review provided:

> Parents beware with your daughters. The owner, [M.J.S.] will enroll your child when they are a baby and when that baby turns of legal age he will sleep with her, proven in court documents by the young lady where he sued someone for making true statements. It's called grooming.

Plaintiff testified the review was so concerning that he contacted Yelp to remove it, but learned it was a "process" and it took "a week" to remove. He relayed people inquired about the review, and he was concerned with the number of people who might have read it.

Plaintiff asserted he knew defendant left the review because she used an account under the name "Colleen . . . ," which she had also used for a review on her friend's business's page in Pennsylvania. During cross-examination of plaintiff, defendant posed, "you had a relationship with a person who was now a young adult, early [twentie]s, that you had trained from the age of five?" and then volunteered to the judge the information was the truth. Defendant admitted to leaving a review on her friend's business's page but denied leaving the review on defendant's page, claiming it was not from her phone and her account was hacked. Defendant maintained, "if [plaintiff was] accusing [her] of slander," the review was "a true statement."

A-0698-22

In his TRO complaint, plaintiff indicated there was an extensive history of domestic violence. He testified, without objection, to multiple prior incidents in which defendant allegedly: "hit [him] with [a] car"; "forged [his] name on a life insurance policy which gave her ownership of [his] policy"; attempted to "set [his] truck on fire"; "burn[ed] all [his] clothes, and . . . punched [him] in the face"; and tried to hit him "with a fire poker." Both parties claimed issues with tracking on their children's iPhones' "location sharing" and "Find My iPhone" features.

After hearing the testimony and reviewing the evidence, the judge issued an oral decision, finding plaintiff had proven, by a preponderance of the evidence, the predicate act of harassment. The judge further found that an FRO was necessary to protect plaintiff from immediate or future acts of domestic violence.

On appeal, defendant argues the judge erred by issuing the FRO given that plaintiff failed to establish that she committed a predicate act of harassment, and failed to articulate an FRO was necessary to protect plaintiff from future acts of domestic violence. After our review of the trial testimony, the judge's findings, and the applicable law, we find no merit to defendant's arguments.

5

II.

Our review of an FRO issued after a bench trial is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). In reviewing "a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." J.D. v. A.M.W., 475 N.J. Super. 306, 312-13 (App. Div. 2023) (alteration in original) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)). Trial court findings are "binding on appeal when supported by adequate, substantial, credible evidence." G.M. v. C.V., 453 N.J. Super. 1, 11 (App. Div. 2018) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "We defer to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412).

We do not disturb a trial judge's factual findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." S.D. v. M.J.R., 415 N.J. Super. 417. 429 (App. Div. 2010) (quoting Cesare, 154 N.J. at

6

412).  "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise.'"  C.C., 463 N.J. Super. at 428 (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)).  However, we review de novo a trial judge's legal conclusions.  C.C., 463 N.J. Super. at 429.

The New Jersey Legislature enacted the PDVA "to assure the victims of domestic violence the maximum protection from abuse the law can provide."  N.J.S.A. 2C:25-18.  The PDVA protects victims of domestic violence, which include, among others, persons who have been "subjected to domestic violence by a . . . former spouse."  N.J.S.A. 2C:25-19(d); R.G. v. R.G., 449 N.J. Super. 208, 219-20 (App. Div. 2017) (recognizing the amended definition of "[v]ictim of domestic violence" evinced "the Legislature's intent to broaden the application" of the PDVA).

The entry of an FRO under the PDVA requires the trial judge to make certain findings pursuant to a two-step analysis delineated in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006).  Initially, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a)

has occurred." Id. at 125 (citing N.J.S.A. 2C:25-29(a)). The judge is also required to consider "any past history of abuse by a defendant as part of a plaintiff's individual circumstances and, in turn, factor that history into its reasonable person determination." Cesare, 154 N.J. at 403. "'A single act can constitute domestic violence for the purpose of the issuance of an FRO,' even without a history of domestic violence." C.C., 463 N.J. Super. at 434-35 (quoting McGowan v. O'Rourke, 391 N.J. Super. 502, 506 (App. Div. 2007)). Second, if a predicate act is proven, the judge must determine whether a restraining order is necessary to protect the plaintiff from immediate harm or further acts of abuse. Silver, 387 N.J. Super. at 127. A previous history of domestic violence between the parties is one of six non-exhaustive factors a court is to consider in evaluating whether a restraining order is necessary to protect the plaintiff. N.J.S.A. 2C:25-29(a)(1); see also D.M.R. v. M.K.G., 467 N.J. Super. 308, 324-25 (App. Div. 2021) (holding whether a judge should issue a restraining order depends, in part, on the parties' history of domestic violence).

Harassment, N.J.S.A. 2C:33-4, is a predicate act of domestic violence enumerated under the PDVA. Under N.J.S.A. 2C:33-4(a) and (c), a person commits an act of harassment

if, with purpose to harass another, he:

8

[(a)] Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

. . . .

[(c)] Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

To commit harassment, a defendant must "act with the purpose of harassing the victim." D.M.R., 467 N.J. Super. at 323. "'A finding of purpose to harass may be inferred from the evidence presented' and from common sense and experience." Ibid. (quoting H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003)). "Although a purpose to harass can be inferred from a history between the parties, that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D., 207 N.J. 487. A judge must consider "the totality of the circumstances to determine whether the harassment statute has been violated." H.E.S., 175 N.J. at 326 (quoting Cesare, 154 N.J. at 404).

## III.

Guided by these standards, we discern no basis to disturb the judge's entry of an FRO against defendant. In concluding that defendant committed the

9

predicate act of harassment under the first <u>Silver</u> prong, the judge found "pretty horrific texts or at least harassing texts," and noted that while plaintiff was testifying about the messages, defendant was "smiling and smirking." Although the messages were troubling, the judge found "most concerning . . . th[e] [review] on Yelp, which [he] believe[d] 100 percent [defendant] did." The review was deemed "damaging" and "dangerous" to plaintiff's business, and defendant's harassment "ha[d] to be addressed." Specifically, in his oral decision, the judge had cited to N.J.S.A. 2C:33-4, referencing the language under subsection (a) and finding that defendant had made "unwanted communications" through "text applications," which were "annoying and alarming." The judge's finding that defendant committed the predicate act of harassment is supported by substantial credible evidence in the record.

Relevantly, the judge made ample credibility findings. Plaintiff's testimony regarding the text messages and Yelp review was deemed credible based on his "good demeanor," "even tone," and "eye contact." Regarding defendant's credibility, she was observed to have "made good eye contact," but spoke over plaintiff "a few times," had "contradictions" in her statements, and was "completely unbelievable" at times. The judge specifically found

A-0698-22

defendant's explanation regarding the Yelp review, that her phone and account were hacked, incredible as "[defendant] flat out didn't tell the truth."

Defendant's assertion that the Yelp review was "an isolated act" based on mere "circumstantial evidence," which did not sufficiently support a finding that she committed a predicate act of domestic violence, is unavailing. The judge based the harassment finding on both the Yelp review and defendant's "unwanted communications." Further, he concluded that defendant "absolutely" did not act with "any other purpose" other than to "harass and humiliate and embarrass, which was both annoying and alarming." We defer to the judge's findings "when the evidence is largely testimonial and involves questions of credibility." MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare, 154 N.J. at 412).

With respect to the second Silver prong, the judge found the FRO was necessary to protect plaintiff from "immediate danger," "further abuse," and future harm. The parties acknowledged a long history of prior complaints and relevantly, at the time of trial, the parties had agreed to mutual civil restraints. With this background established, the judge noted "when the dust was settled," defendant "went out of [her] way to publicly humiliate" plaintiff and found he could not "allow" her "conduct to continue." The judge determined the FRO

was necessary for plaintiff's protection. We are satisfied the credible evidence in the record supports the judge's decision.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0698-22