918 A.2d 716 (2007)
391 N.J. Super. 502
Patricia McGOWAN, Plaintiff-Respondent,
v.
Lewis O'ROURKE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted January 24, 2007.
Decided April 3, 2007.
*717 Steven B. Lieberman, for appellant.
Rosanne S. DeTorres, Flemington, for respondent.
Before Judges A.A. RODRÍGUEZ, COLLESTER and LYONS.
The opinion of the court was delivered by
LYONS, J.S.C. (temporarily assigned).
In this domestic violence case, defendant, Lewis O'Rourke, appeals from a Final Restraining Order ("FRO") entered against him in the Family Part pursuant to the Prevention of Domestic Violence Act (the "Act"), N.J.S.A. 2C:25-17 to -35 on February 8, 2006, in favor of plaintiff, Patricia McGowan. The following factual and procedural history is relevant to our consideration of the issues advanced on appeal.
The parties had a dating relationship. The parties broke up but did not reconcile as they had in the past. Eventually, plaintiff sent defendant an e-mail telling him that their relationship was over and that she did not want him to contact her again. Defendant testified that, after receiving the message, he tried to contact plaintiff again, but only for the purpose of obtaining the return of his camera, which he had earlier loaned to her. Sometime after that, plaintiff's sister received an envelope addressed to her with no return address. Inside the envelope were twelve photographs of plaintiff in sexually explicit positions together with an e-mail and a print-out from a web-site. Defendant acknowledged that he took all of the photographs in the envelope. Also in the envelope was a note asking for the return of his camera.
Plaintiff testified that later the next day, defendant telephoned her and asked her how her sister liked the photographs and that if she did not like them, maybe her son or some of the people at work could see them. Defendant testified that he sent the photographs to plaintiff's sister because he had no way of getting in touch with plaintiff because she had cut him off completely. He also testified that he thought it was appropriate to send plaintiff's sister the graphic pictures because he wanted to return her goods and get his camera back. He compared the act of mailing the photos as an "olive branch" in an effort to regain possession of his camera.
On January 24, 2006, plaintiff obtained a temporary restraining order alleging that on January 24, 2006,
the defendant mailed nude pictures of the plaintiff to her sister and had threatened to send them to her work and to her son. Defendant follows plaintiff while she is at work, at home, or out socially, and defendant has told plaintiff `if he can't have her, no one will.'
The complaint alleged predicate acts of domestic violence, lewdness, harassment and stalking.
On February 2 and 8, 2006 the trial court heard testimony. After the conclusion of plaintiff's case, the trial judge dismissed the lewdness and stalking charges. At the conclusion of the trial on February 8, 2006, the trial judge rendered an oral decision in which she found defendant had *718 committed harassment, an act of domestic violence. The court, in its decision, stated:
I just looked through the photographs. Clearly, some of them are very, very graphic, pornographic I should say and the defendant admitted taking these photographs and they were meant to be just for him and the plaintiff for their fun and benefit.
There's no dispute that these are very, very graphic pictures and it would be  if they got into the wrong hands, intensely humiliating, and embarrassing, and degrading for the plaintiff.
There is no mistake that the defendant did send them to the plaintiff  the plaintiff's sister, pardon me, and that act clearly is an act that is meant to annoy or alarm.
Furthermore, the plaintiff testified that the  she did have a conversation after his sister received the photographs then the plaintiff became aware that her sister received the photographs in which the defendant said that  suggested that he might send the photos to her workplace and to her son. The defendant denied it, but he was not credible when he did so, and the plaintiff was credible when she said that he made that threat.
Based upon the court's finding of an act of harassment and the stipulated existence of a past dating relationship, the court entered an FRO on February 8, 2006.
Plaintiff requested an award of legal fees at that time. The court directed that an affidavit of services and a letter brief be filed with the court in support of plaintiff's claim. Upon receipt of plaintiff's affidavit of services and letter brief, defendant filed a reply to plaintiff's counsel fee application. The trial court granted plaintiff's counsel fee application and awarded plaintiff $4,617.50 in legal fees. This appeal ensued.
On appeal, defendant presents the following arguments for our consideration: (1) "the single act of sending provocative photographs to plaintiff's sister did not constitute harassment"; (2) "the judge failed to make the necessary finding that a restraining order was necessary to protect the plaintiff from further abuse"; and (3) "the award of attorney fees was in error". We have no basis to disturb the judgment, however, we will address defendant's points seriatim.
A single act can constitute domestic violence for the purpose of the issuance of an FRO, and the judge found on competent, credible and supportable evidence that an act of harassment occurred. See Cesare v. Cesare, 154 N.J. 394, 402, 713 A.2d 390 (1998).
Defendant points to N.J.S.A. 2C:25-29(a) which provides in part:
The courts shall consider but shall not be limited to the following factors [in determining whether to grant a final restraining order]: (1) the previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse; (2) the existence of immediate danger to personal property; (3) the financial circumstances of the plaintiff and defendant; (4) the best interest of the victim and any child; (5) in determining custody and `parenting time' the protection of the victim's safety; and (6) the existence of a verifiable order of protection from another jurisdiction.
Defendant argues that the trial court failed to make necessary findings under each of the factors set forth above and, therefore, the order should be vacated. Such an analysis ignores the language of Cesare, supra, 154 N.J. at 401-02, 713 A.2d 390 in which the court said:

*719 [b]ecause some of the above factors, such as the financial circumstances of the parties and the best interests of the child, are relevant only to [ ] fashion [ ] a domestic violence remedy, N.J.S.A. 2C:25-29(a) does not mandate that a trial court incorporate all of those factors into its findings when determining whether or not an act of domestic violence has been committed.
The court noted that "the Act does require that `acts claimed to be domestic violence . . . be evaluated in light of the previous history of [domestic] violence between the parties.'" Id. at 402, 713 A.2d 390 (quoting Peranio v. Peranio, 280 N.J.Super. 47, 54, 654 A.2d 495 (App.Div.1995)). It was stipulated in this case that there was no previous history of domestic violence. The trial court recognized that and still concluded that an FRO was merited. We agree. The act of mailing graphic pornographic pictures to a third-party and implying that they may be sent to the victim's workplace and her son is egregious.
Lastly, defendant argues that the award of attorneys' fees was in error, claiming that the court did not review the first three factors in R. 5:3-5(c) pursuant to Pullen v. Pullen, 365 N.J.Super. 623, 630, 839 A.2d 1006 (Ch.Div.2003). In Schmidt v. Schmidt, the court noted that "N.J.S.A. 2C:25-29b(4) expressly includes `reasonable attorney's fees' as compensatory damages." 262 N.J.Super. 451, 453, 620 A.2d 1388 (Ch.Div.1992). The court noted that the "statutory language should be given its ordinary meaning" and because this statute sets forth attorney's fees as compensatory damages, "attorneys' fees are not subject to the traditional analysis contained in N.J.S.A. 2A:34-23 and Williams v. Williams, 59 N.J. 229, 281 A.2d 273 (1971)." Ibid. The Schmidt court held that to be entitled to fees, "[t]he fees must be a direct result of the domestic violence; they must be reasonable; and pursuant to R. 4:42-9(b), they must be presented by affidavit." Id. at 454, 620 A.2d 1388.
In Grandovic v. Labrie, our court, in determining whether an award of attorney's fees to a domestic violence victim on appeal is warranted, concluded that the same rationale set forth in Schmidt should apply. 348 N.J.Super. 193, 197, 791 A.2d 1038 (App.Div.2002). We noted that "[i]t would be inimical to the Act to deny a victim an award of reasonable attorney's fees and costs incurred in successfully defending against a challenge to a final restraining order issued by the trial court." Ibid.
In Wine v. Quezada, 379 N.J.Super. 287, 877 A.2d 377 (Ch.Div.2005), the issue was addressed again. The court there held that since attorney's fees are expressly included in the Act as compensatory damages, the considerations which apply to an award of counsel's fees in a matrimonial action are inapplicable. Id. at 292, 877 A.2d 377. That court noted that "to hold otherwise would create a chilling effect on claims made by bona fide victims who might have the ability to pay." Id. at 293, 877 A.2d 377. We concur with the reasoning in Schmidt, Grandovic and Wine and disapprove that in Pullen, supra. The Act specifically provides for an award of attorney's fees and, therefore, they are permitted by the Court Rules. See R. 4:42-9(a)(8). The reasonableness of attorney's fees is determined by the court considering the factors enumerated in R. 4:42-9(b). That rule incorporates the factors stated in R.P.C. 1.5. If, after considering those factors, the court finds that the domestic violence victim's attorney's fees are reasonable, and they are incurred as a direct result of domestic violence, then a court, in an exercise of its discretion, may award those fees.
*720 However, an award of attorney's fees continues to rest within the discretion of the trial judge. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 443-444, 771 A.2d 1194 (2001). The Packard-Bamberger court noted that any "`determinations by trial courts [regarding legal fees] will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Id. at 444, 771 A.2d 1194 (quoting Rendine v. Pantzer, 141 N.J. 292, 661 A.2d 1202 (1995)). In accordance with that deferential standard of review, we find no abuse of discretion by the trial judge in her decision to award the fees in this case.
Accordingly, we affirm the judgment based on the findings and conclusions of Judge Amy O'Connor in her oral opinion of February 8, 2006. See Cesare, supra, 154 N.J. at 411-16, 713 A.2d 390 (outlining the scope of review).
Affirmed.