# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2457-19

V.R.H.,

    Plaintiff-Respondent,

v.

N.F.C.,

    Defendant-Appellant.

_____

Argued March 10, 2021 - Decided September 1, 2021

Before Judges Ostrer and Accurso.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FV-10-0241-20.

Stephen Lukach argued the cause for appellant.

Daniel B. Tune argued the cause for respondent (Martin & Tune, LLC, attorneys; Daniel B. Tune, of counsel and on the brief).

PER CURIAM

Defendant N.F.C. appeals from a final restraining order entered against him pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35, based on the predicate act of assault. He contends the evidence failed to establish plaintiff V.R.H. needs the protection the order provides. He also argues the trial court erred in awarding attorneys' fees. Having reviewed the record, we cannot agree on either point and thus affirm entry of the restraining order and the fee award.

At the time of these events, the parties were freshmen in college living in the same dorm. They started dating shortly after arriving on campus. Plaintiff described the relationship as "intense," noting defendant had had her name tattooed onto his back. Although plaintiff testified defendant had "rules" for her about what she could wear, whom she could talk to, and what she could or could not post on the internet, the first time he hit her was during spring semester.

Defendant was showering, and plaintiff took his phone and, "goofing around," took pictures "of his face under the water." She acknowledged defendant told her to stop, but claimed "it wasn't a very demanding or serious request." When she continued, defendant reached out of the shower and punched her several times in the arm. Defendant for his part testified he "told her to stop multiple times," and didn't think "it matters how you say it," because "stop is

A-2457-19

stop." When she didn't stop, defendant claimed he tried "to reach out and grab the phone," but he did not hit her. The court admitted a picture plaintiff claimed she took after the incident showing her upper left arm with several significant bruises she claimed resulted from defendant punching her. Defendant testified he couldn't say whether plaintiff got those bruises when he was grabbing for the phone.

The predicate event occurred near the end of the fall semester sophomore year, a week or so after plaintiff told defendant she had decided to transfer to another college. The two had gotten into an argument in the middle of the night over Snapchat exchanges on defendant's phone between defendant and one or two other young women. When plaintiff, still holding defendant's phone, tried to exit the bathroom where they were arguing out of earshot of defendant's roommate, she claimed defendant grabbed the back of her collar, spun her around, slammed her against the wall and put both his hands around her neck, choking her to the point where she was struggling to breathe. He then bit her face. She suffered a concussion.

Defendant admitted he grabbed plaintiff by the back of the shirt and had "her up against the wall," demanding she "[g]ive me my property back." He claimed the two started to wrestle over the phone. He denied having both hands

3

around her neck, claiming it was only one hand. He admitted biting her in order to get her to drop his phone. Defendant acknowledged he caused the bruising on plaintiff's face and neck depicted in the photographs entered into evidence.

After hearing that testimony, Judge Michael J. Rogers termed the case "not complicated." Although plaintiff alleged assault and harassment, the judge did not find harassment. He noted both parties spoke to one another in "very salty language," and that he could not find defendant acted with a purpose to harass in directing insulting or demeaning comments toward plaintiff. He had no trouble finding assault, however. Besides finding plaintiff "very credible," the judge noted the corroborating physical evidence in the form of hospital records and the photographs depicting plaintiff's injuries as well as defendant's own admissions.

The judge rejected defendant's argument that while he "might have technically assaulted her by grabbing her . . . around her neck, and . . . biting her . . . to get [his] phone back . . . she doesn't need a final restraining order to prevent further abuse or to protect her from further abuse," because defendant cut off all contact with her after that incident and the two now attend different colleges in separate states. The judge had "no question" but that plaintiff testified truthfully that "defendant told her what to wear, he told her how she

4

should talk, what she can post on social media, who she could like, who she could hang out with," and found that was "all about control, and this is the kind of control that ended up . . . in . . . a serious physical altercation."

The judge also found the prior history in keeping with the assault defendant inflicted on plaintiff in the incident just discussed. The judge believed plaintiff when she testified "she was scared of him," and he did not accept defendant's argument that because the two were now at different colleges she didn't need the protection a final restraining order provides. Their colleges, although in different states, are only two hours apart, thus "not that far away." More important, the judge found the parties, as many young people, moved in the same social circles, that they were involved in a very intense romantic relationship, and that given the severity of the assault in the way it ended, a final restraining order was necessary to protect plaintiff from further abuse.

Informing that decision was the judge's concern about the amount of control defendant exerted over plaintiff. The judge observed that "people that want to control other people, other human beings, they don't let go easily." They might "let go" for a period of time, but "inevitably" come back to exercise more control, sometimes through an innocuous contact with a third party. The judge noted "[i]t's all part of the cycle of domestic violence." Judge Rogers concluded

that defendant's assault on plaintiff during fall semester sophomore year was "very, very serious," that it "never should have happened," and that it was "an escalation of the violence that happened nine months before," leading him to be "very concerned that this young woman [would be] in immediate danger" from defendant without a final restraining order.

Our review of a trial court's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Findings by the trial court "are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 412 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). Deference is especially appropriate in a case, such as this one, in which the evidence is largely testimonial and involves questions of credibility because the trial court's ability to see and hear the witnesses provides it a better perspective than a reviewing court to judge their veracity. Ibid.

A final restraining order may issue only if the judge finds the parties have a relationship bringing the complained of conduct within the Act, N.J.S.A. 2C:25-19(d); the defendant committed an act designated as domestic violence, N.J.S.A. 2C:25-19(a); and the "restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Silver

A-2457-19

v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006) (noting once the jurisdictional prerequisites have been met, the judge's task is two-fold; first to determine whether plaintiff proved a predicate act, and, if so, whether a final restraining order is necessary to protect the victim from immediate danger or to prevent further abuse).

Applying those standards here, we find defendant has provided us no basis on which we could upset the factual findings or legal conclusions of the trial court. Defendant "does not dispute the factual finding of assault." He argues it's the judge's "legal conclusion" of the necessity of a final restraining order that is mistaken. Defendant argues the judge erred in failing to consider the four factors of N.J.S.A. 2C:25-29(a)(3) to -29(a)(6) defendant concedes do not "appear relevant," and that the judge's findings that defendant was "controlling" and that there was a prior history of domestic violence between the parties were unwarranted.[1] We find his arguments to be without merit. See R. 2:11-3(e)(1)(E).

---

[1] N.J.S.A. 2C:25-29(a) provides in part:

> The courts shall consider but shall not be limited to the following factors [in determining whether to grant a final restraining order]: (1) The previous history of domestic violence between the plaintiff and defendant,

7

There is no requirement that a trial judge incorporate all the N.J.S.A. 2C:25-29(a) factors, certain of which, such as the parties' financial circumstances and the best interests of any child, are relevant only to remedy, into its findings on a final restraining order. See Cesare, 154 N.J. at 401-02. Judge Rogers appropriately focused on the first two statutory factors, the previous history of domestic violence between the parties and whether there existed an immediate danger to plaintiff's person or property.

And contrary to defendant's assertion that the trial court's second Silver prong analysis constitutes a legal conclusion to which we owe no deference, we think it is more accurately described as a mixed question of law and fact. In order to decide whether entry of a restraining order is necessary, the court must consider and make factual findings as to the first N.J.S.A. 2C:25-29(a) factor — the existence of any past history of domestic violence. Silver, 387 N.J. at 128. Those factual findings, when supported by the record as are Judge Rogers'

including threats, harassment and physical abuse; (2) The existence of immediate danger to person or property; (3) The financial circumstances of the plaintiff and defendant; (4) The best interest of the victim and any child; (5) In determining custody and 'parenting time' the protection of the victim's safety; and (6) The existence of a verifiable order of protection from another jurisdiction.

8

findings, are indeed binding on appeal. Cesare, 154 N.J. at 412. Our de novo review is limited to the court's application of any legal rules to those factual findings. See Kamen v. Egan, 322 N.J. Super. 222, 228 (App. Div. 1999).

As to the parties' past history, defendant argues that "[s]urely, a few blows to the arm or grabbing for one's phone when someone is attempting to take nude photos of them in the shower, is not an outlandish response, especially in the context of this college dating relationship." We disagree. The judge believed plaintiff when she testified she was photographing defendant's face under the water, and that defendant punched her several times during that incident, and he rejected defendant's efforts to minimize and justify his conduct — as we do here. As our Supreme Court has noted, "there is no such thing as an act of domestic violence that is not serious." J.D. v. M.D.F., 207 N.J. 458, 473 (2011) (quoting Brennan v. Orban, 145 N.J. 282, 298 (1996)).

Further, the judge viewed plaintiff's credible testimony about defendant's behavior toward her as representing a classic "pattern of abusive and controlling behavior," emblematic of domestic violence. Cesare, 154 N.J. at 397 (quoting Peranio v. Peranio, 280 N.J. Super. 47, 52 (App. Div. 1995)); see also Silver, 387 N.J. Super. at 128 (noting "it is clear that a pattern of abusive and controlling behavior is a classic characteristic of domestic violence"). We reject defendant's

suggestion that the judge's recognition of that pattern means he ignored the facts in evidence and based his finding on the risk of future abuse on "baseless assumptions outside the record."

As we noted in Silver, once a court has concluded the plaintiff proved an act of domestic violence, the "second determination — whether a domestic violence restraining order should be issued — is most often perfunctory and self-evident." 387 N.J. Super. at 127. We believe the seriousness of the assaults on plaintiff made it so here. Notwithstanding, Judge Rogers carefully explained his reasons for entering the order — defendant's prior history of controlling behavior and domestic violence toward plaintiff, the escalating pattern of violence, that the two travel in the same circles and their colleges are not that far apart, and the seriousness of the assault that ended their relationship — all of which have considerable support in the record. The judge's factual findings and credibility determinations were thorough, and his legal analysis is sound. We find no error, much less reversible error, in his conclusion that plaintiff required the protection of a final restraining order.

Judge Rogers awarded plaintiff attorney's fees of $6806, the amount she requested in her counsel's fee certification submitted in accordance with Rule 4:42-9, and reimbursement for her out-of-pocket medical costs of $52.50,

rejecting defendant's arguments that the fee sought was higher than the usual amount for similar services in Hunterdon County, and that plaintiff presented no proof of any obligation to pay her counsel.

The judge reasoned that N.J.S.A. 2C:25-29(b)(4) expressly permits an award of reasonable attorney's fees and out-of-pocket losses as elements of monetary compensation for losses sustained as a direct result of domestic violence, making the considerations that apply to an award of counsel fees in a matrimonial action, including the parties' relative financial circumstances, not applicable. See Wine v. Quezada, 379 N.J. Super. 287, 292-93 (Ch. Div. 2005). The court found the fees reasonable "both in terms of the lodestar and the result achieved," and found "irrelevant whether counsel's services to plaintiff were pro bono in terms of a retainer fee or whether he would have sought payment" had plaintiff been unsuccessful in securing a final restraining order, considering that a matter "between the attorney and the client."[2]  We agree.

---

[2]  According to the retainer agreement in the appendix, plaintiff's counsel represented plaintiff through Hunterdon County's SAFE HAVEN program, a network of lawyers willing to assist victims of domestic violence; agreeing to bill her at his hourly rate of $415 but only seek payment should the court enter a final restraining order and order defendant to be responsible for payment of her fees.

On appeal, defendant argues the award should be vacated because it is an invalid contingency fee pursuant to Rule 1:27-7; the court did not consider whether fees should have been awarded pursuant to Rule 5:3-5(c), in accordance with Pullen v. Pullen, 365 N.J. Super. 623 (Ch. Div. 2003); and compensatory counsel fee damages do not exist here because plaintiff was under no obligation to pay her counsel fee. We find no merit in these arguments.

An award of attorney's fees in a domestic violence matter rests within the discretion of the trial judge. McGowan v. O'Rourke, 391 N.J. Super. 502, 508 (App. Div. 2007). "'[D]eterminations by trial courts [regarding legal fees] will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

Plaintiff's fee arrangement with her counsel is plainly not a contingent fee as defined under Rule 1:21-7(a). While payment was made contingent on the court entering a final restraining order on plaintiff's behalf (and an order from the court making defendant responsible for her fees), compensation was neither fixed nor determined under a formula as contingent fees are defined in Rule 1:21-7(a). We expressly disapproved of Pullen in McGowan, holding Rule 5:3-5(c) is inapplicable to a fee application under the Prevention of Domestic

Violence Act. <u>McGowan</u>, 391 N.J. Super. at 507-08. Finally, defendant has not cited any case barring an award of fees in a domestic violence matter to an attorney who has assumed the victim's representation pro bono — a fact that does not surprise us given it would appear contrary to the Act's purpose of "encourag[ing] the broad application of the remedies available under this act in the civil and criminal courts of this State." N.J.S.A. 2C:25-18.

We affirm the entry of the final restraining order substantially for the reasons expressed by Judge Rogers in his thorough and thoughtful opinion from the bench on January 16, 2020, and likewise affirm the fee award, finding it well within the court's considerable discretion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2457-19