# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0135-23

N.M.D.I.,[1]

    Plaintiff-Respondent,

v.

H.R.S.,

    Defendant-Appellant.

_____

       Submitted December 17, 2024 – Decided January 14, 2025

       Before Judges Susswein and Perez Friscia.

       On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FV-14-1269-23.

       Law Offices of Robert J. DeGroot, attorneys for appellant (Robert J. DeGroot, of counsel; Oleg Nekritin, on the brief).

       Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the confidentiality of the victim in these proceedings. R. 1:38-3(d)(10).

Defendant H.R.S. appeals from the August 1, 2023 final restraining order (FRO) entered against him under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant argues the trial court erred in granting an FRO because plaintiff N.M.D.I. demonstrated no history of domestic violence and the predicate offense of criminal mischief, N.J.S.A. 2C:17-3(a)(1), alone did not warrant an FRO. Having reviewed the record and applicable legal principles, we affirm.

I.

Plaintiff began dating defendant in July 2020. At the time, she was twenty years old, and defendant was nineteen years old. They had known each other since middle school. After they dated for approximately two-and-a-half years, plaintiff ended their relationship in February 2023.

Plaintiff obtained a temporary restraining order (TRO)[2] after filing a domestic violence complaint on June 25, alleging defendant committed the predicate acts of harassment, N.J.S.A. 2C:33-4(c), and criminal mischief. Plaintiff alleged one incident of domestic violence.

---

[2] On appeal, defendant did not provide a copy of the TRO referenced as an exhibit in his merits brief.

A-0135-23

At the FRO trial, plaintiff was self-represented, and defendant appeared with counsel. Plaintiff testified that on June 25 at approximately 12:30 a.m. she heard a "very loud bang[]" while asleep in her bedroom. She later realized the noise was caused by her bedroom window being broken. Because she did not know what happened and was frightened, plaintiff began screaming for her mother. Plaintiff's bedroom was on the second floor and faced the back of her residence. She explained that for someone to get to her window, "[they] ha[d] to go all the way around the [back of the] house" on the grass.

Plaintiff recalled "panicking a little bit," because she was unsure what caused the window to break. She went outside with her mother to investigate and called a friend to come over. They discovered a rock about the size of her fist was "thrown through [her bedroom] window." Her friend also found a cellphone "on the side of [plaintiff's] house," which plaintiff recognized as defendant's phone from the screen background. Plaintiff's mother called the police.

Plaintiff testified that after she ended her relationship with defendant, she tried to call him one time in June 2023. The parties otherwise had no contact and had blocked each other's "social media and phone numbers." Plaintiff relayed that throughout their relationship, defendant was "very dishonest and

3

untrustworthy." She explained their relationship was "very toxic," partly because defendant engaged in "lots of infidelity." Plaintiff clarified she "want[ed] to be assured that [she was] not going to get rocks thrown through [her] window again or have any other property damaged." Further, plaintiff expressed: feeling "a little afraid . . . it might happen again"; "still [being] worried about [her] property and any future retaliation"; and wanting an FRO "to be assured that this [would not] happen again."

Plaintiff explained that because defendant damaged the window, they had to replace it, and her parents obtained an estimate from a contractor. The estimated cost to replace the window was approximately $4,000.

Defendant testified that on June 25 he drove to plaintiff's residence and went in her backyard because he wanted "to get [plaintiff's] attention." He had hoped "it could be romantic" and threw a rock at her window, believing "it would . . . bounce[] back." After the "[g]lass shattered, [he] got scared, [because] it was extremely loud, and ran . . . away." He admitted his relationship with plaintiff had been "toxic" but relayed having "a lot of love for her family" and "for her." Shortly after the court issued the TRO, he offered to pay for the window. Defendant maintained he only wanted plaintiff's attention and had no intention to hurt her.

4

After hearing the parties' testimony, the court found plaintiff had proved the predicate act of criminal mischief by a preponderance of the evidence but found plaintiff failed to prove defendant committed harassment. The court also found an FRO was necessary to protect plaintiff from immediate or future acts of domestic violence

On appeal, defendant argues the court erred in issuing the FRO because: there was no history of domestic violence; and the underlying predicate offense of criminal mischief did not warrant the issuance of an FRO pursuant to Silver.[3]

II.

Our review of an FRO issued by the Family Part after a bench trial is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). In reviewing "a trial court's order entered following [a] trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." J.D. v. A.M.W., 475 N.J. Super. 306, 312-13 (App. Div. 2023) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)). A trial court's findings are "binding on appeal when supported by adequate, substantial, credible evidence." T.B. v. I.W., 479 N.J.

---

[3] Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006).

Super. 404, 412 (App. Div. 2024) (quoting T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017)).

"We defer to the credibility determinations made by the trial court because the trial [court] 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" J.D., 475 N.J. Super. at 313 (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)). We, however, review de novo a trial court's legal conclusions. C.C., 463 N.J. Super. at 429.

It is well-recognized the New Jersey Legislature enacted the PDVA "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. The PDVA defines a "[v]ictim of domestic violence" as "any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship." N.J.S.A. 2C:25-19(d).

The entry of an FRO under the PDVA requires the trial court to make certain findings pursuant to a two-step analysis delineated in Silver, 387 N.J. Super. at 125-27. Initially, "the [court] must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125 (citing

N.J.S.A. 2C:25-29(a)). The court must also consider "any past history of abuse by a defendant as part of a plaintiff's individual circumstances and, in turn, factor that history into its reasonable person determination." J.D., 475 N.J. Super. at 314 (quoting Cesare v. Cesare, 154 N.J. 394, 403 (1998)). "'A single act can constitute domestic violence for the purpose of the issuance of an FRO,' even without a history of domestic violence." C.C., 463 N.J. Super. at 434-35 (quoting McGowan v. O'Rourke, 391 N.J. Super. 502, 506 (App. Div. 2007)). If the court finds defendant committed a predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim" from immediate harm or further acts of abuse. Silver, 387 N.J. Super. at 126.

Criminal mischief is an enumerated predicate act under N.J.S.A. 2C:25-19(a)(10). N.J.S.A. 2C:17-3(a)(1) provides in pertinent part that "[a] person is guilty of criminal mischief if he . . . [p]urposely or knowingly damages tangible property of another." The term "'[p]roperty of another' includes property in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property." N.J.S.A. 2C:20-1(h).

Guided by these principles, we discern no basis to disturb the court's entry of an FRO against defendant. We reject defendant's argument that the court erred in issuing an FRO because plaintiff established no domestic violence history, and defendant's predicate act of criminal mischief alone did not warrant a "permanent" FRO. Our Supreme Court has long recognized that "the need for an order of protection upon the commission of a predicate act of 'domestic violence,' . . . may arise even in the absence of . . . a pattern [of domestic violence] where there is 'one sufficiently egregious action[.]'" Silver, 387 N.J. Super. at 128 (second alteration in original) (quoting Cesare, 154 N.J. at 402).

In determining whether an FRO was warranted under Silver, the court acknowledged plaintiff offered no history of domestic violence between the parties and had only relayed that there was distrust and "problems" in their relationship. The parties both testified that their relationship was "toxic." Plaintiff testified it took her time to "get up the courage to leave." In determining whether there was a need to protect plaintiff from future domestic violence under Silver, the court made specific findings regarding defendant's act of criminal mischief in relation to plaintiff's testimony concerning her fears and need for protection.

In finding defendant committed the predicate act of criminal mischief, the court noted the size of the rock defendant threw and found defendant had acted purposefully or knowingly. The court reasoned that "when you throw a rock that big at somebody's house, whether it hits the shutters, hits a window, hits the side of the house, the likelihood of it causing damage is fairly high." As defendant had admitted to throwing the rock at plaintiff's window to get her attention, the court found it was "purposeful or knowing damag[e] [to] another[] [person's] property."

In addressing the second prong of Silver, the court focused specifically on whether plaintiff demonstrated the committed predicate act was a "sufficiently egregious action" to support the "need for an order of protection." It concluded defendant's "sneak[ing] into [plaintiff's] yard" "at 12:30 at night and throwing a big rock through [her] bedroom window when [she was] sleeping, is that sort of an act." Notably, the parties had not been communicating and had blocked each other's social media and phone numbers. The court acknowledged that weighing the evidence under the second prong was a closer decision than whether defendant committed the predicate act, but it found that defendant's decision to run away from the property after breaking the window was relevant. Further, plaintiff had stated multiple times that she believed an FRO was necessary for

9

her safety. The court found plaintiff was credible, stating, "[T]here[ is] no question that the testimony of the plaintiff [wa]s very believable." After assessing the witnesses' credibility and the factual testimony, the court concluded plaintiff's "concerns [we]re legitimate," and she met her burden of proving "there [wa]s a need for a restraining order."

Because we recognize the expertise held by the family court and afford substantial deference to the court's "findings of fact and the legal conclusions based upon those findings," D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013), we will not "engage in an independent assessment of the evidence as if [we] were the court of first instance." R.G. v. R.G., 449 N.J. Super. 208, 218 (App. Div. 2017) (alteration in original) (quoting N.T.B., 442 N.J. Super. at 215-216) (internal quotation marks omitted). Therefore, after a review of the record, we discern no reason to disturb the court's issuance of an FRO against defendant.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0135-23