# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2001-24

J.B.C.,[1]

    Plaintiff-Respondent,

v.

M.M.,

    Defendant-Appellant.

_____

Submitted December 3, 2025 – Decided January 14, 2026

Before Judges Paganelli and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-1081-25.

Legal Services of New Jersey, attorneys for appellant (Shoshana E. Gross, of counsel and on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the identity of victims of domestic violence and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(9)–(10).

Defendant M.M. appeals from a January 28, 2025 final restraining order (FRO) entered in favor of plaintiff J.B.C. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We vacate the FRO, reinstate the temporary restraining order (TRO), and remand for proceedings consistent with this opinion.

I.

We recount the facts as developed during the trial on the parties' cross-complaints for FROs. Plaintiff was self-represented and defendant was represented by counsel. Plaintiff and defendant testified along with four other witnesses: Officer Bryan Arrington, Detective Fabrice Veloso, plaintiff's uncle, and defendant's mother.

On December 19, 2024, defendant contacted the police after plaintiff retrieved a gun during a verbal dispute, loaded it, and told defendant to "get the f[***] out." The police responded and arrested plaintiff.

The next day, defendant obtained a TRO against plaintiff based on the predicate acts of assault, harassment, and terroristic threats stemming from the December 19 incident and from plaintiff's subsequent threats to expose sexually explicit photographs and videos of defendant. A few days later, plaintiff obtained a TRO against defendant, based on the allegation defendant had

assaulted her on December 19 by "[g]rabb[ing] [her] by the neck and th[rowing] her against the wall." The TROs prohibited each of the parties from contacting the other or "causing anyone else to make harassing communications" toward the other. Defendant later obtained an amended TRO, which added the predicate acts of cyber harassment and contempt.

Defendant testified the parties had a verbal altercation on December 19, while he was in the process of moving out of the marital residence, at plaintiff's request. Defendant denied having touched plaintiff or threatening her physically before she pointed the gun at him. Plaintiff asserted she had not assaulted or threatened defendant. Defendant's mother testified that during a phone conversation after the December 19 incident, plaintiff denied defendant had hit her and stated she had pointed the gun at him because she was hormonal, not because she felt threatened.

In support of his FRO application, defendant produced plaintiff's posts onto TikTok through which she allegedly had harassed him. Plaintiff testified that her TikTok videos neither identified defendant nor violated the TRO, which did not prohibit her from making "comments about anything in [her] life."

Defendant also submitted body-worn camera (BWC) footage from police officers who responded to the scene on December 19. Officer Arrington testified

3

that on December 19, plaintiff had denied that the parties had a physical altercation or that she sustained any injury requiring medical treatment.

Detective Veloso testified he had seen where the gun, ammunition, and keys to a safe where the gun and ammunition were left and that their placement was "consistent with somebody just having accessed" them. Detective Veloso did not observe plaintiff displaying any signs of physical distress or injuries.

During the hearing, plaintiff was permitted by consent to amend her complaint to include the allegation defendant was in contempt of the TRO because he and his family members had attempted to contact plaintiff by telephone after its entry. Defendant's mother testified that she had contacted plaintiff after the TRO was entered, but not "at the behest of [defendant]."

Prior to summations, the judge noted the absence of plaintiff's testimony concerning her allegations of assault and contempt. The judge permitted plaintiff to reopen her case to testify about calls she had received from defendant and his family members after the TRO was entered. Plaintiff testified she had received a call from defendant's cell phone on December 26, but she did not answer the call. Consequently, she could not say whether defendant had initiated the call in violation of the TRO. Plaintiff also referenced a text message she had sent defendant's mother the same day she received that call, threatening

4

to have defendant arrested if he contacted her again. Plaintiff testified she did not feel comfortable or safe because defendant repeatedly attempted to contact her in violation of the TRO. However, plaintiff did not provide specific instances of when defendant had attempted to contact her.

The judge issued an oral decision and found defendant had proven plaintiff engaged in cyber harassment. The judge found that neither plaintiff nor defendant's mother had testified to any physical assault. The judge also found plaintiff had not established defendant harassed her through purposeful offensive communication, offensive touching, or alarming conduct, as required to establish harassment under N.J.S.A. 2C:33-4.

The judge held plaintiff had proven by a preponderance of the evidence that defendant was in contempt of the TRO through her testimony that defendant had attempted to contact her by telephone on December 26, without making a finding defendant's actions were purposeful or knowing. The judge found plaintiff's testimony was corroborated by evidence of her phone call to defendant's mother warning she would go to the police if defendant attempted to contact her again.

A-2001-24

Satisfied defendant and plaintiff had proven at least one of the predicate acts alleged in their respective complaints under the first <u>Silver</u> prong,[2] the judge then found the parties had satisfied the second <u>Silver</u> prong without setting forth his analysis. On January 28, 2025, the court entered cross-FROs as to both parties. This appeal followed.

## II.

The scope of our review is well-established. Our review of Family Part orders is limited. <u>Cesare v. Cesare</u>, 154 N.J. 394, 411 (1998). We give substantial deference to the Family Part's findings of fact because of the Family Part's special expertise in family matters. <u>Id.</u> at 413. Deference is especially appropriate in bench trials when the evidence is "largely testimonial and involves questions of credibility." <u>Id.</u> at 412 (quoting <u>In re Return of Weapons to J.W.D.</u>, 149 N.J. 108, 117 (1997)). A trial judge who observes witnesses and listens to their testimony is in the best position "to make first-hand credibility judgments about the witnesses who appear on the stand." <u>N.J. Div. of Youth & Fam. Servs. v. E.P.</u>, 196 N.J. 88, 104 (2008).

As such, we do not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and

---

[2] <u>Silver v. Silver</u>, 387 N.J. Super. 112 (App. Div. 2006).

reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not defer to the trial court's legal conclusions and, instead, review them de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

When determining whether to grant an FRO pursuant to the PDVA, a trial court must conduct two inquiries. Silver, 387 N.J. Super. at 125-27. "First, the [court] must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. The predicate acts under this provision correspond to various statutory crimes and comprise the definition of "domestic violence" under the PDVA. See N.J.S.A. 2C:25-19(a). "Second, if a court finds a predicate act occurred, 'the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence.'" T.B. v. I.W., 479 N.J. Super. 404, 412-13 (App. Div. 2024) (quoting D.M.R. v. M.K.G., 467 N.J. Super. 308, 322 (App. Div. 2021)).

III.

Defendant contends plaintiff had not proved the predicate act of contempt through evidence that defendant knowingly or purposely violated plaintiff's

TRO. Further, decisional law construing the PDVA does not countenance entry of an FRO based on a single nonviolent predicate act. In addition, the judge failed to set forth findings of fact as to the second prong of Silver. After considering each of these arguments in light of prevailing law as applied to the record, we vacate the FRO entered against defendant, reinstate the TRO, and remand for proceedings consistent with this opinion.

### A.

A person is guilty of contempt if he or she "purposely or knowingly violates any provision in an order entered under the provisions of the [PDVA]." N.J.S.A. 2C:29-9(b)(1). A person acts "purposely" if he or she consciously engages in conduct or causes a certain result. N.J.S.A. 2C:2-2(b)(1). A person acts "knowingly" if he or she is aware of his or her conduct, the circumstances surrounding his or her conduct, or of a high probability that those circumstances exist. N.J.S.A. 2C:2-2(b)(2).

To support the finding of knowing or purposeful contempt, a defendant need not "personally acknowledge the legal implications of his [or her] conduct." State v. S.K., 423 N.J. Super. 540, 547 (App. Div. 2012). However, "the evidence must allow at least a reasonable inference that a defendant charged

with violating a restraining order knew his conduct would bring about a prohibited result." Ibid.

The FRO trial record demonstrates defendant was served with the TRO on December 24, 2024, and that plaintiff received a call from defendant's cell phone number on December 26. According to plaintiff, she did not answer her phone and, thus, could not say with certainty that defendant was the caller. On these facts, it is unclear on what basis the judge found defendant had engaged in purposeful or knowing conduct constituting contempt of the TRO.

Rule 1:7-4 obliged the trial judge to set forth the factual basis for his finding that defendant purposely or knowingly violated plaintiff's TRO by calling her on December 26. Rule 1:7-4 requires a trial court to "state clearly [its] factual findings and correlate them with the relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s]." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594 (App. Div. 2016) (alterations in original) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)). Without explicit factual findings correlated to legal conclusions, appellate courts "are left to conjecture as to what the judge may have had in mind." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990).

Because the record is devoid of any analysis regarding contempt, as required under Rule 1:7-4, we remand for factual findings and conclusions of law by the trial court on this issue. See T.B., 479 N.J. Super. at 413 (vacating an FRO and remanding the matter due to the trial court's failure to satisfy Rule 1:7-4).

## B.

In addition to determining whether a predicate act is established, the first prong of Silver requires trial judges to evaluate the "previous history of domestic violence between the parties including threats, harassment and physical abuse, . . . and the existence of immediate danger to person or property." Silver, 387 N.J. Super. at 123 (internal citation omitted). After this analysis, the judge may grant an FRO if the record shows a "pattern of abusive and controlling behavior" by the defendant or "one sufficiently egregious action." Id. at 128 (quoting Cesare, 154 N.J. at 402).

"'A single act can constitute domestic violence for the purpose of the issuance of an FRO,' even without a history of domestic violence." C.C. v. J.A.H., 463 N.J. Super. 419, 434-35 (App. Div. 2020) (quoting McGowan v. O'Rourke, 391 N.J. Super. 502, 506 (App. Div. 2007)). Nevertheless, the PDVA "expressly directs the court to consider such history," Pazienza v. Camarata, 381

N.J. Super. 173, 183 (App. Div. 2005), and "trial courts must weigh the entire relationship between the parties and must specifically set forth their findings of fact in that regard." Ibid. (quoting Cesare, 154 N.J. at 405).

Here, the judge did not expressly consider the parties' "previous history of domestic violence." Silver, 387 N.J. Super. at 126. Nor did the judge evaluate whether defendant's conduct amounted to "one sufficiently egregious action." Id. at 128. Accordingly, the judge shall make findings on this issue pursuant to Rule 1:7-4 on remand.

C.

The second inquiry under Silver requires a trial court to determine "whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." T.B., 479 N.J. Super. at 412-13 (quoting D.M.R., 467 N.J. Super. at 322). "[T]he Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order." Silver, 387 N.J. Super. at 126-27. The factors that the court should consider under the second Silver prong include, but are not limited to:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;

(2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety;

(6) The existence of a verifiable order of protection from another jurisdiction; and

(7) Any pattern of coercive control against a person that in purpose or effect unreasonably interferes with, threatens, or exploits a person's liberty, freedom, bodily integrity, or human rights with the court specifically considering evidence of the need for protection from immediate danger or the prevention of further abuse . . . .

[N.J.S.A. 2C:25-29(a).]

When an FRO is based on a violent predicate act, this inquiry is "most often perfunctory and self-evident." Silver, 387 N.J. Super. at 127. When the predicate is nonviolent, "the trial court must still evaluate the factors in N.J.S.A. 2C:25-29(a)(1) to -(6) to determine whether an FRO is warranted to protect the victim from an immediate danger or to prevent further abuse." A.M.C. v. P.B., 447 N.J. Super. 402, 417 (App. Div. 2016).

Trial courts must exercise care to "distinguish between ordinary disputes and disagreements between family members and those acts that cross the line

into domestic violence." R.G. v. R.G., 449 N.J. Super. 208, 225 (App. Div. 2017). The PDVA is not intended to encompass "ordinary domestic contretemps." Corrente v. Corrente, 281 N.J. Super. 243, 250 (App. Div. 1995). Rather, "the [PDVA] is intended to assist those who are truly the victims of domestic violence." Silver, 387 N.J. Super. at 124 (quoting Kamen v. Egan, 322 N.J. Super. 222, 229 (App. Div. 1999)). The second Silver prong "requires the conduct must be imbued by a desire to abuse or control the victim." R.G., 449 N.J. Super. at 228 (citing Silver, 387 N.J. Super. at 126-27).

Here, the judge did not expressly correlate his legal conclusion that an FRO was necessary to protect plaintiff to a factual basis in the record as required under Rule 1:7-4 when he evaluated the second Silver prong. Accordingly, we are constrained to vacate the January 28, 2025 FRO against defendant, reinstate the TRO, and remand the matter, directing the judge on remand make findings pursuant to Rule 1:7-4 regarding defendant's alleged violation of plaintiff's TRO, the parties' history of domestic violence, and the issues to be considered under the second Silver prong.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

13

A-2001-24