# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0481-24

B.J.D.,

      Plaintiff-Respondent/
Cross-Appellant,

v.

K.M.F.,

      Defendant-Appellant/
Cross-Respondent.

_____

      Submitted December 17, 2025 – Decided April 6, 2026

      Before Judges Mayer and Jacobs.

      On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FV-14-0658-24.

      Einhorn, Barbarito, Frost, Botwinick, Nunn & Musmanno, PC, attorneys for appellant/cross-respondent (Patricia L. Veres, on the briefs).

      B.J.D., self-represented respondent/cross-appellant.

PER CURIAM

Defendant K.M.F. appeals both a final restraining order (FRO) issued under the Prevention of Domestic Violence Act (Act), N.J.S.A. 2C:25-17 to -35, and a separate order awarding plaintiff B.J.D. a reduced amount of counsel fees.[1] Plaintiff cross-appeals, challenging the reduction of his requested counsel fees. We affirm both orders in full.

I.

The unmarried parties lived together from approximately 2013 to 2017. They have two children, born in 2013 and 2016. Plaintiff is self-employed in a seasonal pool maintenance business. Defendant is a veterinarian.

The parties' co-parenting arrangement was contentious. In September 2017, defendant obtained a temporary restraining order (TRO), alleging plaintiff punched her. This incident precipitated the parties' final separation.

Defendant later dismissed the TRO in exchange for civil restraints. A 2018 consent order governed custody and parenting time and required curbside child exchange. Custody and parenting time disputes persisted. As a result, in March 2022, the parties agreed to pickups and drop-offs at local police stations.

On January 2, 2024, plaintiff filed a domestic violence complaint and obtained a TRO. He alleged defendant committed criminal mischief, N.J.S.A.

---

[1] In the interest of privacy, we use initials pursuant to Rule 1:38-3.

2C:17-3, and harassment, N.J.S.A. 2C:33-4, on December 30, 2023. The incident arose when the parties' younger child forgot his glasses after parenting time in plaintiff's home. Defendant texted plaintiff and requested he leave the glasses on the porch. Plaintiff responded the child could retrieve the glasses from inside the home.

When defendant arrived, the glasses were not on the porch. She went to the door. Plaintiff told her she was not permitted to be there and the child should come inside to get his glasses. After a brief exchange, plaintiff shut the door and began recording the encounter. From the video, defendant is heard pounding on the door, shouting plaintiff is a pedophile who uses or deals drugs. Defendant then strikes a storm window of the home, shattering it.

The trial judge viewed the video in question on both days of a two-day trial for final restraints held on May 14 and June 10, 2024. Plaintiff and defendant testified on their own behalf. Plaintiff called as witnesses his girlfriend and the Hopatcong police officer who responded to the domestic disturbance on December 30. Defendant called no witnesses.

Plaintiff testified regarding prior incidents of domestic violence, adducing approximately eighteen text messages defendant sent in December 2023 criticizing his parenting and accusing him of substance abuse. A video recorded

on February 20, 2023 shows a parenting time exchange in the Hopatcong police station parking lot. Although the video is not accompanied by audio, defendant is seen yelling at plaintiff and continues yelling as she walks toward the car where plaintiff's girlfriend was seated. After plaintiff shields his girlfriend from view, defendant walks to her car with the children and makes an obscene gesture toward plaintiff. Another video admitted in evidence shows the same interaction taken from the girlfriend's vantage point. On it, defendant can be heard yelling to plaintiff's girlfriend, "do you care that you are going to lose custody of your son if you're caught with a pedophile?"

After testimony on June 10, citing the seminal case of Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), the judge found plaintiff had proven predicate acts of criminal mischief and harassment.

> In this case, [plaintiff]'s proven his case by a preponderance of the evidence, that the [d]efendant committed the act of criminal mischief . . . . It is not a criminal finding. . . . But she did bang on the window with sufficient force that it shattered the window.
>
> . . . .
>
> . . . [T]he harassment, you can't on multiple occasions, at the police department parking lot in February and outside of his house . . ., which is not a matter of him being afraid of her. It's a matter of him just wanting some peace and quiet.

A-0481-24

You know, . . . her purpose was to harass him to open the door and give [her] the glasses. But it is harassment. I do find that she engaged in conduct which was likely to cause annoyance and alarm with the purpose to harass and upset and annoy him by a preponderance of the evidence . . . .

The judge also found plaintiff had satisfied the second Silver prong, concerning the necessity for permanent restraints.

I do find that it's necessary to enter into the final restraining order because not only ha[ve] the predicate acts of harassment and criminal mischief been met, but based upon the prior history, things seem to be escalating. And [defendant] is of the firm belief that her ex, [plaintiff], inappropriately did things with their children.

. . . .

I do find the need [] for the restraining order to stop this from continuing . . . .

Based upon what the court has heard, I think I would be a hypocrite if I didn't enter that restraining order today. Because if he went over to [defendant's] house and broke her window and was yelling that she's a pedophile on the front lawn, she'd get a restraining order too . . . .

Plaintiff subsequently moved for an award of attorney's fees in the amount of $12,740.18 under N.J.S.A. 2C:25-29(b)(4). The judge granted the motion in part, awarding $8,500 in counsel fees in an order with accompanying statement of reasons entered on August 29, 2024. In reducing the fee amount sought, the

5

judge highlighted numerous communications via letter, email, and phone calls, "none of which ha[d] any description whatsoever, . . . appear[ing] to be unreasonable." Plaintiff's motion for reconsideration was denied.

## II.

Appellate review of the Family Part's findings following a domestic violence trial is limited and deferential, recognizing the court's specialized expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 413 (1998). Factual findings and conclusions will not be disturbed unless the trial court's determinations "are so manifestly unsupported by or inconsistent with the competent, relevant, and reasonably credible evidence as to offend the interests of justice." Id. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Where factual disputes hinge on witness credibility, the family judge is especially well-positioned to make such assessments. See Ibid.

Issuance of an FRO under the Act requires proof, by a preponderance of the evidence, of: (1) commission of a predicate act of domestic violence under N.J.S.A. 2C:25-19(a); and (2) the necessity of restraints to protect the victim from future acts of domestic violence. Silver, 387 N.J. Super. at 125-26. The predicate acts at issue here are criminal mischief and harassment. The pertinent

6

aspect of criminal mischief occurs when one "[p]urposely or knowingly damages tangible property of another . . . ." N.J.S.A. 2C:17-3(a)(1).

The predicate act of harassment occurs when one:

> a. makes, or causes to be made, one or more communications . . . in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> . . . .
>
> c. engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.[2]
>
> [N.J.S.A. 2C:33-4(a), (c).]

The necessity prong requires consideration of both the objective risk of recurrence and the victim's reasonable apprehension. Silver, 387 N.J. Super. at 127.

Defendant argues her actions did not exceed a level of "more serious conduct than our courts have previously found not to be harassment." (Emphasis omitted). She contends although it is abundantly clear "the parties mutually annoy one another[,] . . . [defendant's] motive in being at the location was not

---

[2] Subsection (b) provides, "[s]ubjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so[,]" is not relevant to this case, nor referenced in either party's merits briefs.

7

to harass, but to solve a problem for their son." Thus, defendant asserts her acts did not rise to the level of communicating "in a manner likely to cause annoyance or alarm" as provided under subsection (a) or constitute a "course of alarming conduct" or "repeatedly committed acts with purpose to alarm or seriously annoy" as stated in subsection (c).

We discern no abuse of discretion in the trial court's finding that defendant's yelling at plaintiff through the front door and accusing him of illicit drug use and pedophilia, rather than sending the child inside as plaintiff requested, was indicative of her harassive intent. Accusations of such a nature certainly constitute "offensively coarse language . . . likely to cause annoyance or alarm." N.J.S.A. 2C:33-4(a).

Regarding criminal mischief, defendant argues "there was no credible evidence in the record [showing] [d]efendant purposefully or knowingly caused the exterior storm window to break." Specifically, defendant references the judge's statement "she did bang on the window with sufficient force that it shattered the window." Defendant maintains this is irrelevant in a case such as this where "purposefully or knowingly" causing the damage to occur is required and cites to her testimony she merely intended to knock on the window and it only shattered because it was "dated and fragile[.]" We disagree.

8

In closing argument, defendant's counsel stated, "[b]ut at the end of the day, you know, from a legal perspective, is this criminal mischief? Criminal mischief requires purposeful and knowing conduct." The judge responded, "Right." Although the judge did not himself utter the words "knowing" or "purposeful," in his conclusions of law, from context it is clear he adopted the applicable mens rea standard when concluding "[plaintiff]'s proven his case by a preponderance of the evidence, that the [d]efendant committed the act of criminal mischief." When clear from context, as here, there was no need for the judge to repeat the mens rea standard he had openly acknowledged moments before.

In sum, the trial judge's findings were well supported by both testimonial and video evidence documenting defendant's conduct during the December 30, 2023 incident as well as by a broader pattern of documented hostile and alarming acts. The judge's determinations regarding intent and credibility, grounded in these findings, are entitled to substantial deference and are fully supported by the record.

We turn next to attorney's fees. Attorney's fees are awardable under the Act as compensatory damages pursuant to N.J.S.A. 2C:25-29(b)(4) and Rule 4:42-9(a)(8) and must be reasonable as assessed under the factors set forth in

RPC 1.5(a). The award or denial of counsel fees, and their quantum, rests within the sound discretion of the trial court, and is disturbed on appeal only in the rarest circumstances for clear abuse of discretion. Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)).

We discern no abuse of discretion in the judge's partial grant of plaintiff's request for attorney's fees. The judge determined some of the requested fees for communications between plaintiff and counsel were unreasonable. This was because counsel submitted vague and excessive billing entries, lacking sufficient detail to demonstrate that the full amount was reasonable or directly related to the domestic violence litigation as required by law. See N.J.S.A. 2C:25-29(b)(4). The judge rendered a coherent and reasoned analysis in accordance with applicable rules and case law. The judge also found, based on fees awarded in other domestic violence cases, that the amount requested was excessive. In denying plaintiff's reconsideration on the awarded fees, the judge explained why he rejected certain charges – namely the failure to describe the services with particularity. See Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (reiterating "abuse of discretion" as the standard of review for a trial

court's decision on a motion for reconsideration) (citing <u>Kornbleuth v. Westover</u>, 241 N.J. 289, 301 (2020)).

Plaintiff's remaining arguments for reversal and remand lack merit as the judge was under no obligation to conduct a further hearing or apply <u>Rule</u> 5:3-5(c) matrimonial factors.  <u>McGowan v. O'Rourke</u>, 391 N.J. Super. 502, 507-08 (App. Div. 2007).  The judge rendered an adequate statement of reasons under <u>Rule</u> 1:7-4 and acted within his discretion in awarding $8,500.

Any arguments not addressed lack "sufficient merit to warrant discussion in a written opinion."  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0481-24