# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3298-24

C.A.A.,[1]

 Plaintiff-Respondent,

v.

S.I.A.,

 Defendant-Appellant.

_____

   Argued March 10, 2026 – Decided March 20, 2026

   Before Judges Gilson and Perez Friscia.

   On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FV-11-1145-25.

   Hanan M. Isaacs argued the cause for appellant.

   Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the confidentiality of the victim in these proceedings. R. 1:38-3(d)(10).

Defendant S.I.A. appeals from the May 13, 2025 final restraining order (FRO) entered against her under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:15-17 to -35, and in favor of plaintiff C.A.A. Defendant argues the trial judge erred in finding she committed the predicate act of harassment and that an FRO was necessary to ensure plaintiff's future protection. Defendant also appeals from the July 9, 2025 amended FRO and companion order awarding plaintiff attorney's fees. Having reviewed the record, parties' arguments, and applicable law, we affirm the issuance of the FRO but vacate the award of attorney's fees and remand for further proceedings consistent with this opinion.

I.

The parties were married in August 2014 and have two children, G.A., born in August 2013, and R.A., born in April 2016. The parties separated in August 2021. In November 2021, defendant filed a divorce complaint, which was dismissed for lack of prosecution. In July 2024, defendant filed another divorce complaint. During the pendency of the divorce matter, the parties mutually agreed to a parenting time schedule.

On February 11, 2025, plaintiff obtained a temporary restraining order (TRO). He alleged defendant committed the predicate acts of harassment and

criminal mischief. Plaintiff also alleged defendant committed prior acts of domestic violence.

In May 2025, the judge presided over a two-day domestic violence trial. Plaintiff testified that on February 8, 2025, he had the parties' children at his residence for the weekend, pursuant to the parenting time agreement. After he had initially agreed to defendant's request to take their daughter to a religious education class, plaintiff asserted he changed his mind and informed defendant via text message on Our Family Wizard (OFW).[2] Plaintiff and his girlfriend, D.H., instead planned to take the children to an activity that day.

Plaintiff testified that, on February 7, 2025, he sent defendant an OFW message at 9:09 p.m., stating that it "was [his] weekend and . . . [he] wished that [she] respected that." He then sent a follow-up OFW message at 9:11 p.m. stating, "Tomorrow is my weekend, take her during your own [parenting time]. Stop overstepping into my time with the kids." The parties had also exchanged earlier messages, which included plaintiff relaying his frustration that defendant had unilaterally canceled their son's occupational therapy sessions.

Plaintiff recounted that the next morning, on February 8, 2025, defendant

---

[2] "Our Family Wizard" is a co-parenting application that allows parents to share messages, calendars, and documents concerning their children.

A-3298-24

arrived at his residence. After defendant rang the doorbell, plaintiff used his cell phone to videotape her at the front door through the video doorbell camera. At trial, he introduced the video recorded conversation he had with defendant, which was admitted into evidence. Plaintiff advised defendant it was his weekend and asked her to leave. Defendant insisted plaintiff send their daughter outside to attend the religious class, which they had "agreed upon." Plaintiff again asked defendant to leave.

After D.H. went downstairs to the front door, plaintiff again used his cell phone to videotape what was happening. D.H. and defendant had a verbal exchange at the front door with defendant repeatedly requesting her daughter. D.H. had observed the door was partially ajar and told defendant multiple times to get the "f*** out of [her] house." Plaintiff observed the situation was "escalating" and heard "the door cracking," so he stopped recording and went to intervene. Defendant called the police, requesting assistance.

Regarding the parties' prior history, plaintiff testified that defendant allegedly "kicked" and "bit[]" him in December 2016, "attempted to push [him] down the stairs" in 2021, and "threw a bowl at [his] head" that resulted in "a

hole in the wall" of their residence.[3]

Regarding his fear of defendant, plaintiff represented "[d]efinitely [feeling] threatened" and believed her "aggressive behavior" demonstrated "she w[ould] go to whatever means in order to threaten [him]." Plaintiff maintained obtaining an FRO became necessary after the February 8, 2025 incident because defendant entered "[his] house" and her behavior had become "exceedingly worse and worse over time." Plaintiff expressed having no "reprieve" from defendant's behavior. While at the time he was testifying he was not physically afraid, he expressed being worried based on "her actions." During cross-examination, plaintiff clarified that, during the incident, he "fear[ed] . . . for [his] physical safety." He denied that he or D.H. pushed defendant.

D.H. testified that on February 8, 2025, she left the front door of the residence unlocked because she was bringing items to her vehicle. After she overheard plaintiff and defendant speaking over the video doorbell, she "went downstairs to see if the door was locked." D.H. discovered the door was "ajar" "a couple [of] inches," opened it, and saw defendant was still outside about "two

---

[3] After defendant's counsel objected that the TRO did not contain specific dates and plaintiff's testimony was expanding the descriptions of the prior history, he advised the judge he did not want an adjournment and would address the issues during cross-examination.

to three feet" from the door. D.H. testified she told defendant to "get out" and defendant responded that "she just wanted [R.A.]" D.H. "pushed the door shut because [she] was scared" and defendant "stuck her foot in the door" and "push[ed] back," which prompted D.H. to "push[] harder." She described defendant's demeanor as aggressive and stated defendant's "foot . . . obstructed the door" from shutting. D.H. and plaintiff "waited for the police to arrive" after the door was closed. On cross-examination, D.H. acknowledged leaving the "door unlocked."

The responding Ewing Township Police Department (ETPD) officer testified that upon arrival at plaintiff's residence, he encountered defendant first. He spoke with defendant and learned she was at plaintiff's residence to pick up R.A. for a "religious ceremony that . . . plaintiff had previously agreed to[] but recanted." Thereafter, the officer spoke with plaintiff and D.H. He learned there was "no standing court order" and the parties "had agreed upon a [visitation] schedule." After watching plaintiff's video evidence, the officer determined that in his view "the specific circumstances did not constitute a domestic violence" incident because the door incident was not directly between plaintiff and defendant. The officer testified that defendant told him D.H. "had pushed her so hard that she fell down." The officer explained he activated his body worn

A-3298-24

camera (BWC) during his investigation and authenticated portions of the video, which were played for the judge. The BWC footage captured the officer's conversation with the parties and D.H.

Defendant testified she did not interpret the February 7, 2025 messages from plaintiff as "saying . . . [she] could not come . . . the next day" to pick up their daughter for the religious education class. She admitted she had opposed plaintiff's placement of their son in therapy services. Defendant asserted plaintiff agreed before their marriage that their children "would be brought up" in her religious faith.

After arriving at plaintiff's residence, defendant maintained she did not open the front door but had "rang the doorbell" twice. Defendant acknowledged plaintiff told her to leave. She remained at the residence, believing they would have a "rational and calm conversation." Regarding the confrontation with D.H., defendant admitted she "should not have[] put [her] foot in the door" but maintained she "did not push" or "shove against . . . the door." She conceded placing her foot in the door was an "emotional reaction" to "try and get . . . [R.A.] to . . . [the] ceremony." Defendant asserted that after plaintiff stopped recording with his cell phone, he "shoved [her] with both hands," causing her to "los[e her] balance." Defendant testified D.H. then "looked at" her and "shoved

7

[her] incredibly hard," causing her to fall and hit her head against a "brick column." She recalled calling 9-1-1 and remaining in her car until police arrived. Defendant told the responding police officer what had occurred and did not require medical attention.

On cross-examination, when asked about the prior incidents, defendant was unable to recall ever "trying to push [plaintiff] down the stairs" or "thr[owing] a bowl at his head." Defendant maintained she "would not have shown up" to plaintiff's residence on the morning of February 8, 2025, if plaintiff "told [her] not to [go]." Defendant acknowledged "[she] should have gone to [her] car and called the police immediately" after D.H. asked her to leave. She believed it was important to respect her "daughter's wishes," denied opening the front door, and recalled being "very emotional."

After hearing the testimony and reviewing the evidence, the judge issued an FRO accompanied by a thirty-six-page oral decision. Regarding credibility, the judge found plaintiff was "credible for the most part," but he was at times "evasive" and "[s]low to answer" during cross-examination. The judge determined, however, that defendant lacked credibility. After considering all the evidence, the judge found plaintiff proved by a preponderance of the evidence that defendant committed the predicate act of harassment under

N.J.S.A. 2C:33-4(c).

The judge noted the parties are involved in a "contentious divorce." He found, after defendant withdrew the parties' son from a therapy program, plaintiff reversed his decision to permit defendant to take their daughter to a religious event during his parenting time. Considering the parties' earlier OFW exchange, the judge found plaintiff's message to defendant that "[t]omorrow [wa]s" his "weekend" and that defendant should take R.A. during her parenting time and not "overstep[] into [his] time with the kids," was clear. The judge specifically discounted defendant's testimony that "she did not understand" plaintiff had changed his mind, noting it was "unbelievable" and not credible. Further, he explained it was not "reasonable that [defendant] did not know . . . [plaintiff] was saying I[ am] not letting her go" and there was "no justification" for going to plaintiff's residence "given their history and the recent emails about infringing on each other's time."

He found the first video from the incident demonstrated that defendant remained on the premises after being asked, "at least twice[,] to please leave." Regarding the second video, the judge described watching defendant use her boot to prevent D.H. from closing the door and then "step into the doorway." Further, the judge highlighted the second video contradicted defendant's

testimony that she never entered the doorway.

Addressing the parties' prior history, the judge credited plaintiff's testimony that defendant previously attempted to push him "down the stairs" and threw a bowl at him. After examining all the evidence, the judge determined that defendant had committed the predicate act of harassment because she engaged in "a course of alarming conduct." However, the judge determined plaintiff failed to establish by a preponderance of the evidence that defendant committed the predicate act of criminal mischief.

In addressing whether an FRO was necessary to protect plaintiff from future acts of domestic violence, the judge found the issues between the parties had "escalated to the point of . . . [defendant's] confrontational measures." The judge found the FRO was necessary, crediting plaintiff's testimony that he felt "threatened," and noting the parties' prior history. At the conclusion of the judge's findings, plaintiff moved for attorney's fees.

On June 24, 2025, the parties appeared before the judge on plaintiff's application for attorney's fees. Because plaintiff failed to address the factors established under Rule 4:42-9(b) and Rule of Professional Conduct (RPC) 1.5, the judge denied the motion without prejudice, permitting plaintiff to file a supplemental certification to his motion.

After reviewing the supplemental filings, the judge issued a July 9, 2025 order finding "the rates charged for services rendered by counsel to be reasonable and in accord with fees customarily charged for these type[s of] cases," and "[t]he services rendered and resultant fee award were the direct result of an act of domestic violence." The judge awarded plaintiff $13,480 in attorney's fees after reducing the requested amount by $200 "based on entries regarding communications with divorce counsel." There was no analysis under RPC 1.5(a) regarding the attorney's hours spent and difficulty of the issues involved.

On appeal, defendant contends there is no evidence plaintiff needed protection from defendant under Silver[4] prong two, and the judge committed reversible error in granting plaintiff an FRO. Defendant further argues there is no evidence that she committed harassment under N.J.S.A. 2C:33-4(c), because she lacked a purpose to harass plaintiff, and the judge's factual findings support a dismissal of the FRO. Finally, she asserts the judge's attorney's fee award to plaintiff must be reversed.

---

[4] Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006).

A-3298-24

II.

Our review of an FRO issued after a bench trial is limited. T.B. v. I.W., 479 N.J. Super. 404, 412 (App. Div. 2024). In reviewing "a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." J.D. v. A.M.W., 475 N.J. Super. 306, 312-13 (App. Div. 2023) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)). Trial court findings are "binding on appeal when supported by adequate, substantial, credible evidence." G.M. v. C.V., 453 N.J. Super. 1, 11 (App. Div. 2018) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "We defer to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412). We, however, review de novo a trial judge's legal conclusions. C.C. v. J.A.H., 463 N.J. Super. 419, 429 (App. Div. 2020).

The New Jersey Legislature enacted the PDVA "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. The PDVA defines a "[v]ictim of domestic violence" as

12

"any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship." N.J.S.A. 2C:25-19(d); R.G. v. R.G., 449 N.J. Super. 208, 219-20 (App. Div. 2017) (recognizing the amended definition of "[v]ictim of domestic violence" evinced "the Legislature's intent to broaden the application" of the PDVA).

The entry of an FRO under the PDVA requires the trial judge to make certain findings pursuant to a two-step analysis delineated in Silver, 387 N.J. Super. at 125-27. Initially, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125 (citing N.J.S.A. 2C:25-29(a)). The judge is also required to consider "any past history of abuse by a defendant as part of a plaintiff's individual circumstances and, in turn, factor that history into its reasonable person determination." Cesare, 154 N.J. at 403. "'A single act can constitute domestic violence for the purpose of the issuance of an FRO,' even without a history of domestic violence." C.C., 463 N.J. Super. at 434-35 (quoting McGowan v. O'Rourke, 391 N.J. Super. 502, 506 (App. Div. 2007)).

Second, if a predicate act is proven, the judge must determine whether a restraining order is necessary to protect the plaintiff from immediate harm or

further acts of abuse. Silver, 387 N.J. Super. at 127. A previous history of domestic violence between the parties is one of six non-exhaustive factors a judge is to consider in evaluating whether a restraining order is necessary to protect the plaintiff. N.J.S.A. 2C:25-29(a)(1); see also D.M.R. v. M.K.G., 467 N.J. Super. 308, 324-25 (App. Div. 2021) (holding whether a judge should issue a restraining order depends, in part, on the parties' history of domestic violence).

Harassment, N.J.S.A. 2C:33-4, is a predicate act of domestic violence enumerated under the PDVA. See N.J.S.A. 2C:25-19(a)(13). Under N.J.S.A. 2C:33-4(c), a person commits harassment if he or she "[e]ngages in . . . [a] course of alarming conduct or . . . repeatedly committed acts with purpose to alarm or seriously annoy such other person."

To commit harassment, a defendant must "act with the purpose of harassing the victim." D.M.R., 467 N.J. Super. at 323. "'A finding of . . . purpose to harass may be inferred from the evidence presented' and from common sense and experience." Ibid. (quoting H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003)). "Although a purpose to harass can be inferred from a history between the parties, . . . that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D. v. M.D.F., 207 N.J. 458, 487

(2011). A judge must consider "the totality of the circumstances to determine whether the harassment statute has been violated." H.E.S., 175 N.J. at 326 (quoting Cesare, 154 N.J. at 404).

### III.

Defendant first argues that reversal of the FRO is warranted because the judge erred in determining plaintiff satisfied prong two of Silver. She posits the "judge's legal conclusion that [plaintiff] required an FRO [i]s manifestly unsupported by . . . competent, relevant, and reasonably credible evidence." A review of the record does not support that argument.

The judge found plaintiff credibly testified that he feared defendant's future actions. He also found plaintiff established defendant's history of concerning behavior prior to committing the predicate act of harassment on February 8, 2025. The judge noted the contentiousness between the parties and their family dynamic with continued "[c]ustody and parenting time issues." Notably, the judge found defendant's testimony lacked the ring of truth and was specifically concerned that defendant's behavior was "almost normalized." As the judge's findings are sufficiently supported by substantial credible evidence in the record, we discern no reason to disturb the judge's determination that plaintiff requires an FRO for his future protection.

A-3298-24

Defendant next contends the judge's finding that she committed the predicate act of harassment is unsupported by evidence in the record. Defendant also argues there are no specific facts to support she had a purpose to harass plaintiff. After weighing the evidence and parties' credibility, the judge found defendant's alleged benign purpose of taking their daughter to the religious activity was "usurped by [her] aggressive posture" and actions. The judge reasoned that defendant was "enforc[ing] . . . her desire" as demonstrated "by a confrontation that ultimately require[d] the police to be called." Further, the judge determined defendant had the "purpose [of] . . . alarming conduct" because "she bec[ame] confrontational," "escalate[d] [matters] by her refusal to leave," "prevent[ed] the door from being shut," "ent[ered] into the doorway, [and] yell[ed] commands."

The record supports the judge's finding that defendant committed the predicate act of harassment under N.J.S.A. 2C:33-4(c) because she engaged in a "course of alarming conduct." We, therefore, reject defendant's argument that reversal is warranted because the judge made insufficient factual findings to support the issuance of the FRO.

Finally, we turn to defendant's argument that the award of attorney's fees against defendant must be reversed. Defendant argues the "interests of justice"

A-3298-24

and facts do not support the judge's decision. The judge found plaintiff incurred attorney's fees as a direct result of defendant's domestic violence, that "the rates charged for services rendered by counsel [were] . . . reasonable," and the attorney's fees were "customarily charged for these type[s of] cases."

An award of fees in a domestic violence action "rest[s] within the discretion of the trial judge." McGowan, 391 N.J. Super. at 507-08. "We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion," Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)), or "a clear error in judgment," Tannen v. Tannen, 416 N.J. Super. 248, 285 (App. Div. 2010). Our Supreme Court has "cautioned trial courts 'to evaluate carefully and critically the aggregate hours and specific hourly rates advanced by counsel for the prevailing party'" and "not to 'accept passively the submissions of counsel.'" Hansen v. Rite Aid Corp., 253 N.J. 191, 215 (2023) (quoting Rendine, 141 N.J. at 335).

The PDVA authorizes an award of "reasonable attorney's fees." N.J.S.A. 2C:25-29(b)(4). Under the PDVA, a trial judge may award attorney's fees "to avoid a chilling effect on the willingness of domestic violence victims to come forward with their complaints." M.W. v. R.L., 286 N.J. Super. 408, 411 (App.

17

Div. 1995). If, after considering the factors in <u>Rule</u> 4:42-9(b) and RPC 1.5(a)(1) to (8), the "court finds that the domestic violence victim's attorney's fees are reasonable, and they are incurred as a direct result of domestic violence, then a court, in an exercise of its discretion, may award those fees." <u>McGowan</u>, 391 N.J. Super. at 508.

RPC 1.5(a) mandates, "A lawyer's fee shall be reasonable" and provides that "[t]he factors to be considered in determining the reasonableness of a fee include the following":

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

Because the judge's July 9, 2025 order awarding plaintiff $13,480 fails to provide a complete analysis of the factors established under RPC 1.5(a)(1) to (8), we are constrained to vacate in part and remand for the judge to address and provide findings regarding the attorney's fees requested. The judge must conduct a detailed review of the billing statements submitted, including the described work performed, time expended, and difficulty of the work performed in light of the questions presented, as well as other relevant factors. Meaningful appellate review has been impeded without the necessary "findings of fact concerning" the applicable governing factors in awarding attorney's fees. Yueh v. Yueh, 329 N.J. Super. 447, 466 (App. Div. 2000).

Affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division